**Carlos J. WARNER**

v.

**The UNITED STATES.**

**No. 220–61.**

United States Court of Claims.

April 4, 1962.

Lawrence C. Moore, Washington, D. C., for plaintiff.

Frances L. Nunn, Washington, D. C., with whom was William H. Orrick, Jr., Asst. Atty. Gen., for defendant.

JONES, Chief Judge.

Plaintiff is a former Foreign Service Officer in the Department of State who voluntarily retired on May 31, 1959, after some 33½ years of service. Throughout this period of time, 5 percent of plaintiff's salary was deducted each year and paid into the Foreign Service Retirement and Disability Fund.

On April 24, 1959, about one month prior to his retirement, plaintiff elected in writing to receive a reduced joint and survivorship annuity in lieu of the full annuity to which he was otherwise entitled. This election was made pursuant to the terms of section 821(b) of the Foreign Service Act of 1946, 60 Stat. 999, 1020, 22 U.S.C.A. § 1076(b), the pertinent parts of which are set out below.[1] The election provided that plaintiff would receive a reduced annuity during his lifetime, and that his wife, the designated beneficiary, would continue to receive an annuity for the remainder of her life

1. "PART C—COMPUTATION OF ANNUITIES

"Sec. 821. (a) * * *

"(b) At the time of his retirement, a participant, if the husband of a wife to whom he has been married for at least three years or who is the mother of issue by such marriage, may elect to receive a reduced annuity for himself and to provide for an annuity payable to his widow, commencing on the date following his death and continuing as long as she may live. * * * The participant may at his option also elect to have his annuity reduced by an additional 5 per centum of the amount which he elects to have paid to his widow, with a provision that, from and after the death of his wife, if the participant shall survive her, the annuity payable to the participant shall be that amount which would have been payable if no option had been elected."

should she survive plaintiff's death. Plaintiff also elected, pursuant to the last sentence of section 821(b) (hereinafter referred to as the "second election"), to have his annuity further reduced by an additional 5 percent so that, in the event his wife should predecease him, his annuity would, from that time forward, be restored to the amount he would otherwise have received but for his election to take as a joint annuitant.

Subsequently, on May 6, 1960, plaintiff's marriage was terminated, not by the death of his wife, but by an absolute divorce obtained by her.

While the divorce proceedings were still pending, plaintiff made inquiry to the State Department relative to the effect of the divorce on his annuity and whether it would be restored to its full amount after the effective date of the divorce. He was informed [2] that, although the divorce would terminate his wife's right to the survivorship portion of the annuity (since she would not be his "widow" after his death), it would not operate to restore his annuity to its full amount. The reason given for this result was the fact that the last sentence of section 821(b), pursuant to which plaintiff had made his second election, provided for restoration benefits only when the wife predeceases the participant, and not in any other circumstances.

As a result of the Department's interpretation of section 821(b), plaintiff brought this suit wherein he seeks the difference, amounting to approximately $2,000 per year, between the reduced annuity he has received since the date of his divorce and the full amount for that period, to which he claims entitlement.

■ Plaintiff's position is one based essentially upon principles of equity and justice. Thus, it is said that, in giving effect to the second election provided for in section 821(b), an absolute divorce should be treated in the same manner as the prior death of the wife because, in either event, the marriage no longer ex-

ists and, therefore, there is no eligible beneficiary to take the survivorship portion of the annuity after the death of the participant. If an absolute divorce does not operate to restore the annuity to its full amount, says plaintiff, the net result will be the forfeiture of substantial benefits for which he has paid full consideration over the years.

Defendant, on the other hand, seems to contend that, once an election to take a reduced annuity has been made pursuant to section 821(b), that election is irrevocable for actuarial reasons and cannot be changed by the participant at a later time. Defendant also argues that the clear and unambiguous language of the last sentence of section 821(b) must be given the effect presumably intended by the Congress, even if the result be somewhat harsh in a given case.

The issue raised by the respective contentions of the parties is a relatively narrow one and involves the question of whether the termination of a marriage by divorce can be equated with termination by the death of the wife for the purpose of making operative the provisions of the second election of section 821(b). This case is the first in which a court of law has been called upon to consider this question.

Defendant agrees that the events for which plaintiff elected to take a reduced annuity can now never occur. That is to say, the former wife cannot claim the survivorship portion of the annuity as the "widow" of plaintiff, nor can plaintiff obtain the restoration of his annuity to its full amount should his former wife predecease him since, in the words of section 821(b), she is no longer his "wife." Therefore, as the situation now stands, there will be a forfeiture of some of the benefits plaintiff paid for. Defendant recognizes this result, and agrees that it may be somewhat harsh, but urges that it is compelled by the terms of section 821(b).

■■ We do not agree. In the first place, it appears to us that defendant's

2. Plaintiff's exhibits "A" and "B".

reliance upon an irrevocable election made by plaintiff at the time of his retirement is misplaced. Whether that election was in fact irrevocable we need not now decide, for it is apparent that plaintiff, far from trying to change his election, is in reality attempting to show that an event has occurred which should, in good conscience, make operative the election he already made. If plaintiff's wife had predeceased him, the second election of section 821(b) would have automatically come into effect to restore his full annuity from that day forward. Plaintiff is simply asserting that this same result should follow by virtue of his divorce.

Similarly, defendant's reliance upon the terminology of the last sentence of section 821(b) is not, in our opinion, dispositive of the case. It is true, of course, that the indicated language refers to the death of the wife before that of the participant. It is equally true that the plain and unambiguous language of a statute is presumed to express the full intention of the Congress. This, however, is a general rule of construction, and it is not to be applied so rigidly and thoughtlessly in every case as to lead to plainly unreasonable or impracticable consequences. United States v. Missouri Pacific Railroad Co., 278 U.S. 269, 277, 49 S.Ct. 133, 73 L.Ed. 322. The basic difficulty we have with defendant's theory of applying technically the wording of the statute in this instance is that it will lead to a forfeiture. The law abhors forfeitures, and we will not lightly ascribe such an intention to the Congress. Consequently, we believe it unreasonable to hold that the Congress intended the second election of section 821(b) to operate so narrowly as to bring about a forfeiture of benefits after the participant has paid for them over a number of years.

On the contrary, it would appear that the purpose of the second election is to afford the participant an opportunity to avoid the usual risk inherent in joint and survivorship annuities; i. e., the possibility of the participant's wife dying before he does. This being the case, we conclude that the termination of a marriage by an absolute divorce falls within the intendment of the second election of section 821(b) and should be equated with the prior death of the wife for the purpose of restoring the full annuity. This interpretation achieves the desirable result of avoiding the harshness of a forfeiture of substantial benefits and is, in our opinion, clearly within the spirit of the section.

The provision for a specific retirement system for Foreign Service Officers was first established by "An Act For the reorganization and improvement of the Foreign Service of the United States * * *," 43 Stat. 140. That Act provided for mandatory retirement at a certain age and, by way of compensation, provided for contributory retirement benefits at certain rates. A retirement and disability fund was created by section 18 of the Act to accomplish this purpose. Thus, retirement at a definite age was made compulsory and the right to be paid the established retirement benefits was made definite and fixed. Section 821(b) of the 1946 Act then extended to retiring Foreign Service Officers the privilege of sharing their retirement benefits with their wives under certain conditions. In this case, the act of a court of competent jurisdiction has determined that plaintiff's "wife" no longer exists and, as a result, we believe the provisions of the second election of section 821(b) should be interpreted in the manner indicated above.

We note in passing that section 43 of the Foreign Service Act Amendments of 1960, 74 Stat. 845, 22 U.S.C.A. § 1111, provides that, when an annuitant has been recalled, reinstated, or reappointed to duty, and then is re-retired subsequently, his annuity is determined anew in accordance with the provisions of section 821. Thus, if this plaintiff were recalled to duty and then re-retired, he would be entitled to his full annuity from that time forward. This would clearly be a case of changing his original election, yet it is expressly permitted without, we might add, apparent ill effect on

actuarial data or tables. This merely serves to strengthen our conviction that the interpretation of section 821 urged upon us by defendant herein is inequitable and should not be applied.

For the reasons stated above, plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied. Plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), Rules of Court of Claims, 28 U.S.C.A.

It is so ordered.

DURFEE, LARAMORE and WHITAKER, Judges, concur.