Davis, Judge,
delivered the opinion of the court:
Plaintiff Robert Lindsey is a retired government employee, formerly with the Immigration and Naturalization Service of the Department of Justice. In February 1974 he was absent from his job for 76 working hours as a consequence of knee surgery. He was entitled to compensation for that time by charging the hours against his approximately 2,000 hours of accumulated sick leave. However, he properly requested and was permitted instead to charge the time against his accumulated annual leave balance.[1] He made this choice because at the time of his surgery he thought that he was a few years from retirement, would not use his full annual leave for other purposes in 1974, and wanted to use up his annual leave in that year so as not to forfeit any unused amount.[2] Personal *577 circumstances changed unexpectedly, and he decided to retire as of December 31, 1974. When he first made that election, he asked his agency’s Finance Branch for permission to amend his leave balances and switch the 76 hours from annual to sick leave, thereby adding 76 hours to his annual leave balance (for all of which he would be paid in a lump sum on retirement). Although the agency originally told plaintiff that the change would be in order,[3] he was later informed that a 1974 Comptroller General Opinion (B-181087, June 21, 1974) precluded the agency’s compliance with his request.
Plaintiff retired on schedule (December 31, 1974) and received a lump-sum payment for his accumulated annual leave which did not include payment for the 76 hours at issue here. Those hours were still charged against his annual leave balance; on the other hand, his account showed 76 "additional” sick leave hours (which did him no good).[4] In February 1975 he filed a claim for $1,315.46 (the lump-sum amount of his 76 annual leave hours) with the General Accounting Office (GAO) and then submitted a brief to that Office in reasoned support of his position. In September 1975, the GAO issued a "Settlement Certificate” denying his claim and he filed suit in this court. The dispute is over the law not the facts, and both parties have sought judgment.[5]
*578 There is a veiled suggestion from the Government that in any event plaintiff can state no claim under United States v. Testan, 424 U.S. 392 (1976) and Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 372 F.2d 1002 (1967), but at the outset we reject any such position. Lindsey sues here under 5 U.S.C. §§ 5551 and 6304, pay statutes which would plainly provide for the requested addition to the lump-sum payment he received upon retirement if this court decides that the contested 76 hours should have been charged retroactively against sick rather than annual leave. His claim thus properly invokes jurisdiction under 28 U.S.C. § 1491, our authority to hear claims against the United States founded upon Acts of Congress or any regulations of an executive department. Defendant says that Testan and Eastport S.S. Corp. require a claimant to show a regulatory or statutory right to monetary relief before he can succeed in this court. We agree, of course, that plaintiff must make such a showing to prevail, but a claimant can proceed by pointing, as here, to a statutory provision which mandates payment if he is right on the merits. Neither Eastport nor Testan calls upon a plaintiff to show in advance that he can win his case (i.e. prove that his leave hours should be recategorized as sick rather than annual leave) before the court can decide that it has jurisdiction to consider the case. On the contrary, we have held that in general "a claimant who says that he is entitled to money from the United States because a statute or a regulation grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous but arguable” and that "[w]here an Act of Congress [citation omitted] or an executive regulation [citation omitted] arguably confers such rights upon the claimant, the court will assume jurisdiction and decide his case on the merits, even though defendant may ultimately prevail.” Ralston Steel Corp. v. United States, 169 Ct. Cl. 119, 125-26, 340 F.2d 663, 667-68, cert. denied, 381 U.S. 950 (1965). To the same effect see Eastport S.S. Corp., supra, 178 Ct. Cl. at 606-07, 372 F.2d at 1008-09. As we said in those opinions *579 and Testan does not contradict, jurisdiction must not be confused with the merits. We hold, therefore, that the court has jurisdiction to hear this case under 28 U.S.C. § 1491 and that we can proceed to the merits.
On the merits, it is helpful to pinpoint the focus. There is no statute expressly (or by necessary implication) denying plaintiff the right to alter his leave balances nor is there any such regulation applicable to him. What Mr. Lindsey faces are a number of Comptroller General decisions interpreting the policy of the leave legislation so as to preclude the result plaintiff seeks. All agree that these legal rulings are not binding on the court (see, e.g., Iran Nat’l Airlines Corp. v. United States, 175 Ct. Cl. 504, 508, 360 F.2d 640, 641-42 (1966)), but like other administrative interpretations we normally pay considerable attention to those Accounting Office decisions which represent longstanding, consistent administrative interpretations of statutory provisions and give detailed and reasonable analyses of the underlying legislation. See, e.g., Cornman v. United States, 187 Ct. Cl. 486, 492, 409 F.2d 230, 233, cert. denied, 396 U.S. 960 (1969); Kantor v. United States, 205 Ct. Cl. 1, 7 (1974).
The Comptroller General’s rulings on which both the Accounting Office and defendant rely go back to 1952, and include two recent decisions (1974 and 1975) given to employees in plaintiffs precise position.[6] The general themes of these opinions are that (a) a federal employee who asks for one kind of leave compensation (sick or annual), at the time of an absence, makes a binding election which cannot thereafter be changed unless a law or regulation expressly so provides, (b) Congressional policy requires use of annual leave within the prescribed time (on pain of forfeiture), and therefore post hoc leave substitutions for the purpose of avoiding forfeiture should not be allowed, and (c) sound administration does not permit the numerous revisions of the records of completed transac *580 tions which would occur if post hoc substitutions were allowed.
At first look, the Accounting Office position seems to be consistent and long-established. But our attention has been called to another relevant Comptroller General decision not cited by either party and unmentioned by the GAO in its post-1972 rulings referred to in footnote 6, supra. That decision, B-176093, dated July 10, 1972, holds in favor of the employee-claimant. There, the employee (Sica) was ill and out on sick leave that extended continuously from the Fall of 1971 well into the 1972 leave year. Upon returning to work at the end of March 1972, he realized that he had forfeited, at the end of 1971, 18 hours of annual leave under the prevailing "use it or lose it” policy. In the words of the GAO opinion, he explained "that he was unaware that he had to request the substitution of the annual leave for such leave prior to the end of the leave year, that due to the extent by which he was incapacitated it was the furthest thing from his mind to check on his leave status, and he assumed that his interests would be protected and that 'this type of leave would automatically be transferred’.” The Accounting Office authorized the retroactive substitution of annual leave (theretofore considered as having been forfeited by Sica) for an equivalent amount of sick leave for 1971. It said that the employee’s lengthy illness "foreclosed the possibility of his using accrued annual leave to cover absence other than for illness such as for vacation purposes,” that if he had been apprised of the state of his leave account (18 hours of excess annual leave) and had he been able to do so, "[he] would have chosen to apply the forfeitable annual leave to cover an equivalent period of absence prior to the close of the 1971 leave year,” and that "the lack of knowledge of his leave balance does not appear to be attributable to any fault on the part of the employee.”
The underlying rationale of this 1972 GAO decision is not easy to reconcile with the rigid and uncompromising position taken in the earlier and later Accounting Office rulings against such retroactive leave-changes by employees. The Sica decision tends strongly to sap the consistency of the administrative interpretation and to show that the *581 Accounting Office has not followed a straight line. We need not decide, however, whether this one ruling undermines the Comptroller General’s position in all situations of post hoc leave-substitution because we think the theory of the 1972 decision clearly supports such changes requested by employees, like Lindsey, for the year of their retirement. The parallel is apt.[7] In both instances there is good reason not to apply the GAO’s policy against retroactive substitution to avoid forfeiture of annual leave which should have been (but was not) used during the leave year. Lindsey, as we point out below, had a statutory right to receive all accumulated leave (up to 56 days) in the year of his retirement, while Sica, the employee in the 1972 decision, could not use up his annual leave (for vacation or other annual leave purposes) in 1971 because of his protracted illness. Both Sica and plaintiff attempted to avoid a diminution of annual leave which occurred because they were unable to foresee a change in personal circumstances that made their original choice of leave-category inappropriate.[8] It is no more difficult to assume that Lindsey, had he known that he was going to retire, would have chosen differently than it is to assume that Sica would have done so. There is no good reason to indulge the presumption on behalf of one employee and not the other. Both were equally without fault; both were caught by an unanticipated event which changed their situation. Moreover, even if an employee’s initial "election” is normally "binding” and "vested,” and therefore cannot be changed— as stated in the GAO opinions ruling against employees— Sica’s original election was no less binding and vested than Lindsey’s, and yet an exception was administratively made. The reasoning of the Comptroller General’s own 1972 decision in Sica’s case thus sustains plaintiffs claim here.
*582 We choose that reasoning over the rationale of the GAO rulings which go the other way because — at least for an employee like plaintiff who seeks leave-substitution in the year of his retirement — the pro-employee position is well supported by the underlying anti-forfeiture conceptions of the recent leave legislation applicable to this case. The most directly relevant provision, as we shall spell out, is that allowing employees on retirement to be compensated for all accumulated annual leave (up to 56 days), obviating for such retirees forfeiture of accumulated leave in excess of 30 days. Another anti-forfeiture aspect of the newer legislation is that altering the old rule forfeiting unused sick leave on retirement or separation.
The governing statutes are 5 U.S.C. § 8339 (as changed by the Act of October 20,1969, 83 Stat. 139) and 5 U.S.C. §§ 5551, 6304 (as amended by the Act of December 14, 1973, 87 Stat. 705)). Congress passed those provisions to improve the Annual and Sick Leave Act of 1951. Under the 1951 legislation, sick leave did not vest unless properly authorized and used — upon retirement, all unused sick leave was forfeited. As for annual leave, the 1951 Act provided that normally no more than 30 days of accumulated annual leave could be received as a lump-sum payment upon retirement; any additional accumulated leave hours were forfeited.
The new enactments in 1969 and 1973 made several changes in annual and sick leave policy, changes designed to increase benefits to federal employees. The 1969 statute modified the earlier law to allow an employee who had accumulated unused sick leave to be compensated for it by having the accumulated sick leave hours added to his length of total government service for the purpose of computing his annuity at retirement. This new scheme reflected Congress’ belief that an employee who retires with accumulated sick leave (and therefore has spent more time serving the Government than an employee who used or perhaps abused all his leave) should not be penalized but rather compensated. As plaintiff points out, this new policy was in sharp contrast to the earlier 1951 Act mandating forfeiture.
*583 The 1973 Act concerned itself with annual leave. Its purpose, according to the legislative history, was to make several changes in the administration of the leave system and correct "several minor but longstanding inequities in the system.” To correct these inequities, the 1973 Act provides, inter alia, "for improved administration of the Federal employee leave system by permitting employees to take leave during the first 90 days of employment, by providing for a lump-sum payment for leave beyond present máximums in the year of separation, and by adding new provisions for recovery from employees for excess leave.” See, S. Rep. No. 93-491, 93d Cong., 1st Sess., reprinted in [1973] U.S. Code Cong. & Ad. News 2773 (emphasis added). The provision of greatest significance for this case (emphasized in the excerpt just quoted from the Senate Committee report) is that allowing an employee to be compensated upon separation (including retirement) for all accumulated annual leave (up to 56 days), and not just for the 30-day total previously authorized. This new statute, applicable to plaintiff on his retirement, shows that, at least for retirees, Congress no longer insists that the employee use up all his accumulated annual leave within the leave-year. Thus, one very important facet of the GAO’s asserted policy against leave-substitution (see supra) has been thoroughly undermined by Congress itself — at least for retirees like Mr. Lindsey.[9]
This statutory change, plus the exception the Accounting Office has already carved out of its policy in Sica’s case, B-176093, July 10, 1972, discussed supra, plus the general thrust of our legal system against forfeitures (see Warner v. United States, 157 Ct. Cl. 1, 5, 301 F.2d 327, 329 (1962)) persuade us that plaintiff is entitled to recover. The Comptroller General’s dominant policy cannot and should *584 not be applied to this kind of case. As we have already said, there is nothing in the language of the leave statutes which prevents this result (or even suggests the contrary disposition), and there is no regulation of the Department of Justice or the Civil Service Commission which can be read as a bar.[10]
We decide only plaintiffs type of case — of an employee who seeks by leave-substitution to be compensated for all of his accumulated annual leave in the year of his retirement. But we suggest that it would not be inappropriate for the General Accounting Office to review de novo its over-all post hoc leave-substitution policy in the light, first, of the new 1969 and 1973 legislation, and, second, of the reality and measure of the burden on the employing agencies of permitting such retroactive adjustments.[11] It may well be that leave changes should be allowed unless the agency itself feels that the administrative burden is too great, and accordingly adopts an internal regulation limiting or curtailing the privilege.[12] It may even be that no rule applicable to the whole Government need be continued or *585 promulgated, but that the matter should be left to each agency’s own assessment of the needs of its employees balanced with the administrative ease or trouble in accommodating those needs.
The plaintiffs motion for judgment on the pleadings (treated as motion for summary judgment) is granted and the defendant’s motion for summary judgment is denied. The plaintiff is entitled to recover. The amount of recovery will be determined under Rule 131(c).
In accordance with the opinion of the court, a stipulation of the parties and a memorandum report of the trial judge, it was ordered on September 9, 1977 that judgment for the plaintiff be entered for $1,315.56.

 It was not improper for the employee to ask that an absence for illness be charged to annual leave; the General Accounting Office and the Civil Service Commission have recognized for a long time the legality and propriety of such a request timely made.

 Except for the year of retirement or separation, annual leave accumulated in *577 excess of a 30-day "cushion” is forfeited each year if not used before the end of the last pay period for the year. See infra.

 The agency does not have any regulations allowing or prohibiting the requested change in leave balance. Plaintiff was first told orally to have his secretary amend the time sheets in order to reflect the change. Later, this suggestion was rescinded.

 Under the pay statute applicable during the past several years (5 U.S.C. §§ 8332(a) and 8339(m)), infra, and the regulations, a retiring employee does not lose unused accumulated sick leave hours. That time is not forfeited but instead added to the employee’s total years of government service for the purpose of computing his annuity. In plaintiffs case, however, the 76 "additional” sick leave hours did not increase his annuity because the computation formula with respect to accumulated sick leave "rounds off’ fractions of a month so that only full years and months are used in the computation. Plaintiffs total service, according to the Civil Service Commission, was 37 years, 5 months and 20 days, including 2160 hours of sick leave (1 year and 14 days). The contested 76 hours of sick leave equal 14 calendar days — if these hours were subtracted from his service time (leaving 37 years, 5 months and 6 days) his annuity payments would not be changed because of the "rounding off’.

 Plaintiff characterizes his motion as one for judgment on the pleadings but we consider it a motion for summary judgment since materials outside the pleadings have been considered. Defendant has moved for summary judgment.
*578 Mr. Lindsey, not a lawyer, is to be commended for the thorough, able, and helpful manner in which he presented his case through written documents and briefs; he was unable to appear for the oral argument.

 The decisions relied upon are: 31 Comp. Gen. 524 (1952); B-114063, May 25,1953; 38 Comp. Gen. 354 (1953); B-142571 (April 20, 1960); B-164346 (June 10, 1968); B-181087 (June 21, 1974); 54 Comp. Gen. 1086-87 (1975). The last two involve employees (like Lindsey) who sought to substitute sick leave for annual leave (initially used to cover an illness) in the year of retirement.

 It is not important that the retroactive substitution that Lindsey requested is a change from annual to sick leave rather than sick to annual leave; as some of the GAO rulings point out, the Comptroller General has never distinguished between the two for retroactive substitution purposes.

 Indeed, Sica’s case broke more seriously with precedent than Lindsey’s for he presented an actual forfeiture of hours already put into effect by his agency, while Lindsey did not lose the hours but instead used them in a way that was not as beneficial to him as might have been.

 Obviously the administrative burden of allowing post hoc leave-substitutions by retirees in the year of retirement will be minimal. This facet of the threefold GAO policy is thus reduced to insignificance for this type of case. As for the GAO theory of a "binding election” by the employee, which is nowhere found in Congress’ leave legislation, we have already discussed that in connection with the decision in B-176093, July 10,1972 (Sica’s case) supra. The leave statutes do not specifically (or by necessary implication) impose that requirement and even the GAO has not read it into the law where an unexpected change in circumstances induces the attempt at leave-substitution.

 The Federal Personnel Manual Supplement 990-2, chapter 630, subchapter S3-4, Para. b(3), declared against the substitution of annual leave for sick leave on a retroactive basis "solely for the purpose of avoiding a forfeiture of annual leave at the end of the leave year,” but this statement does not expressly cover plaintiff’s case of a change from annual leave to sick leave in the year of retirement. Moreover, the Manual’s statements on this subject specifically refer to and rely on Comptroller General opinions, and we think they simply represent non-binding information given by the Civil Service Commission to federal employees, not Commission regulations having in themselves the force of law. Whatever may be the status of other parts of the Manual (see Piccone v. United States, 186 Ct. Cl. 752, 762 n.12, 770-74, 407 F.2d 866, 871-72, n.12, 876-79 (1969); Manzi u. United States, 198 a. Cl. 489, 492 (1972)), this portion, relating to “Annual leave in lieu of sick leave,” is informational rather than regulatory.

 The 1973 Act contains a provision bearing on the claim that the administrative burden of permitting changes would be too great. That Act provides for former employees to be credited and paid for annual leave lost by administrative error after June 30, 1960 (subject to a final date after which no claims may be filed) and a similar recovery for employees on the rolls at the time of enactment but who separate from government service prior to discovery of leave lost through administrative error. To a large extent Congress thus recognized that correcting inequities (and thereby benefitting employees) was a more important concern than the administrative burden which might be created by re-opening employee leave records.

 The 1973 “Time and Attendance Report Manual” of the Department of Justice seems, in general, to consider retroactive changes in leave reports for errors, etc., as not imposing too great an administrative burden.