The **UNITED STATES, Plaintiff,**

v.

**Christopher C. TABOR, et al., Defendants.**

**Court No. 84–9–01327.**

United States Court of International Trade.

May 3, 1985.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, A. David Lafer and Francis J. Sailer, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Brownstein, Zeidman and Schomer, Washington, D.C. (Steven P. Kersner and Paul S. Davidson, Washington, D.C.) and Zachry, Kearney, Hill, Shaw & Beatty, Tom L. Zachry, Fort Worth, Tex., for defendants.

*Opinion and Order*

RESTANI, Judge:

Plaintiff filed suit in this court on September 27, 1984, pursuant to § 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1982), alleging that defendants attempted to import into the United States an improperly equipped 1983 Porsche automobile from the Federal Republic of Germany. Plaintiff seeks both an *in personam* penalty equal to the domestic value of the automobile (alleged to be $52,159.00 plus interest) and an *in rem* civil forfeiture of the automobile. The automobile was seized by the United States Customs Service ("Customs") on August 11, 1983. Following administrative proceedings which resulted in a mitigated penalty decision on July 5, 1984, and pursuant to defendant Tabor's request of July 13, 1984, this matter was referred to the United States Attorney or the Department of Justice for judicial proceedings. The automobile remains in Customs' possession.

This matter is before the court on defendants' motion to dismiss and to quash the warrant for arrest of the automobile and on plaintiff's motion, pursuant to Court of International Trade Rule 15(a), to amend the complaint. The court will address plaintiff's motion first.

Plaintiff seeks to allege an additional basis for civil *in rem* forfeiture pursuant to 18 U.S.C. § 545 (1982).[1] Plaintiff as-

---

1. 18 U.S.C. § 545 (1982) provides in relevant part:

serts that this court can and should exercise jurisdiction over § 545 forfeiture actions when they are brought in conjunction with related § 592 penalty proceedings. Jurisdiction over federal civil forfeiture actions lies generally with the district courts. 28 U.S.C. § 1355 (1982).[2] The district court's jurisdiction in these actions, however, does not include matters within the jurisdiction of this court under 28 U.S.C. § 1582 (1982). 28 U.S.C. § 1355. Section 1582 grants exclusive jurisdiction to this court of "any civil action which arises out of an import transaction and which is commenced by the United States—to recover a civil penalty under section 592 ... of the Tariff Act of 1930...."[3] Therefore, plaintiff relies on the non-statutory ground of pendent jurisdiction to bring its § 545 civil forfeiture claim before this court.

 "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d

218 (1966); *Network Project v. Corporation for Public Broadcasting*, 561 F.2d 963, 970 (D.C.Cir.1977), *cert. denied*, 434 U.S. 1068, 98 S.Ct. 1247, 55 L.Ed.2d 770 (1978). Such discretion, however, is not left to the court's "inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975), *quoting United States v. Burr*, 25 F.Cas. 30, 35 (C.C.Va.1807) (No. 14,692d) (Marshall, C.J.). The doctrine of pendent jurisdiction is most commonly applicable to federal courts' exercise of jurisdiction over causes of action which normally are decided by state courts. In a case involving a "substantial" claim arising under federal law, the district court has power to entertain a separate cause of action between the same parties based on state law, provided that the state and federal claims "derive from a common nucleus of operative fact" and are sufficiently related so that plaintiff

Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or

Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, or conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

Shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section.

Merchandise introduced into the United States in violation of this section, or the value thereof, to be recovered from any person described in the first or second paragraph of this section, shall be forfeited to the United States.

2. 28 U.S.C. § 1355 (1982) provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States,

of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

3. Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1982) provides in part:

**(a) Prohibition**

**(1) General rule**

Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence, or negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document, written or oral statement, or act which is material and false, or

(ii) any omission which is material, or

(B) may aid or abet any person to violate subparagraph (A).

\* \* \* \* \* \*

**(c) Maximum penalties**

**(1) Fraud**

A fraudulent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise.

\* \* \* \* \* \*

Lesser penalties for gross negligence and negligence are provided.

would "ordinarily be expected to try [both claims] in one judicial proceeding...." *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138.

■ As indicated, exercise of pendent jurisdiction is a discretionary matter and "involvement of federal law in a pendent claim is a factor significantly affecting the proper exercise of that discretion." *Network,* 561 F.2d at 971. *See also Hagans v. Lavine,* 415 U.S. 528, 548, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman,* 397 U.S. 397, 425, 90 S.Ct. 1207, 1224, 25 L.Ed.2d 442 (1974) (Douglas, J., concurring); 13 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3567 (1984). In *Network,* the appeals court reversed the district court's decision not to exercise pendent jurisdiction over a state court claim involving federal law because the lower court's "decision was unresponsive to the considerations that govern the exercise of pendent jurisdiction when the pendent claim invokes federal law." *Network,* 561 F.2d at 971. Absent regard for such considerations and because the court of appeals perceived nothing out of the ordinary that justified a refusal of pendent jurisdiction, the district court was held to have abused its discretion. That case does not hold, as defendant implies, that it is necessarily an abuse of discretion for a federal court to refuse to exercise pendent jurisdiction over a claim involving federal law. Instead, it holds that the fact that the claim without an independent federal jurisdictional basis is one grounded in federal law should weigh in favor of exercising pendent jurisdiction. *See, e.g., Hagans,* 415 U.S. at 548, 94 S.Ct. at 1385; *Rosado,* 397 U.S. at 425, 90 S.Ct. at 1224.

Plaintiff cites several cases for the proposition that one federal court may assume jurisdiction over matters otherwise within the jurisdiction of another federal court. They are *Florida Lime and Avocado Growers, Inc. v. Jacobsen,* 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960), *Rosado,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442, *Romero v. International Terminal Oper-*ating. Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) and *Lefson v. Esperdy,* 211 F.Supp. 769 (S.D.N.Y.1962). First, neither *Romero* nor *Rosado* clearly involves the jurisdiction of two federal courts. Both involve claims based on federal law which may be heard in state courts. (To the extent *Romero* involves pendent admiralty jurisdiction it is so narrow as to have little meaning beyond the facts of the case.) Second, the remaining two cases fail to establish plaintiff's claim that it is appropriate for the CIT to exercise pendent jurisdiction over a § 545 claim. *Florida Lime,* because it involved an action to enjoin a state statute's enforcement on federal grounds, was heard by a panel of three federal judges. The *Florida Lime* court held that the three-judge panel also had jurisdiction over other federal statutory claims which would normally be heard by a single district court judge. It is unclear whether the court in *Florida Lime* grounded the three-judge court's jurisdiction over such claims on pendent jurisdiction principles or solely on Congress' intent with regard to the statute requiring a three-judge panel. *Florida Lime,* 362 U.S. at 85, 80 S.Ct. at 575. *Lefson,* a district court case, involved one claim which was exclusively in the jurisdiction of the appeals court and another which ordinarily would be within the district court's jurisdiction. The district court transferred both claims to the appeals court in order for the appeals court to consider pendent jurisdiction over the claim which was originally before the district court. In *Lefson,* because there is no appellate opinion, there is no evidence that the appeals court exercised pendent jurisdiction. *Cf. Thompson Tower Ltd. Dividend Housing Association v. United States,* 228 Ct.Cl. 766, 771 (1981), *citing Berdick v. United States,* 222 Ct.Cl. 94, 612 F.2d 533 (1979) (transfer does not confer jurisdiction on the transferee court). Therefore, *Lefson* stands only for the proposition that the district court could not hear a claim which was within the exclusive jurisdiction of the court of appeals.

■ Plaintiff first argues that since the district court's jurisdiction over § 545 claims is not exclusive[4] and since jurisdiction over § 592 claims is exclusively in this court, judicial economy compels the exercise of pendent jurisdiction by this court over § 545 actions. Judicial economy, however, is not necessarily an adequate basis for the exercise of pendent jurisdiction. Judicial economy is but one factor to be considered. *See Gibbs*, 383 U.S. at 725–26, 86 S.Ct. at 1138–39. In *United States v. Gold Mountain Coffee, Ltd.*, 8 C.I.T. ——, 597 F.Supp. 510, *reh'g denied*, 601 F.Supp. 212 (1984), this court discussed the closely related concept of ancillary jurisdiction, which plaintiff there sought to invoke regarding its § 545 claims.[5] The court noted, among other factors to be considered before asserting ancillary jurisdiction over federal claims, the necessity of such jurisdiction to the just resolution of the main proceeding. Plaintiff has shown no such necessity here. As the Supreme Court noted in *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978):

> [A]ncillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court.

(footnote omitted).

Plaintiff loses no rights if it is denied a hearing in this court of its § 545 claim; it may simply sue in district court. Although this may be inconvenient for plaintiff, Congress apparently intended this result—as will be discussed *infra*.

■ Although the court's exercise of pendent jurisdiction may not be limited by the requirement of necessity in every case, this court's exercise of pendent jurisdiction is limited by Congressional intent, particularly the Congressional intent involved in Congress' decisions dividing jurisdiction among the federal courts. One of the predecessor courts to the Court of Appeals for the Federal Circuit made this clear in declining to exercise pendent jurisdiction in several cases. *Lockridge v. United States*, 218 Ct.Cl. 687 (1978), involved patent, copyright and trademark claims arising out of the same set of facts, but the Court of Claims found it had jurisdiction over the patent and copyright claims only. The Court of Claims stated that it would not exercise jurisdiction if Congress expressly or impliedly negated its exercise as it had by limiting the court's express jurisdiction to jurisdiction over two of the three types of related claims. *See also Thompson Tower*, 228 Ct.Cl. at 771; *Strick Corporation v. United States*, 223 Ct.Cl. 262, 279, 625 F.2d 1001, 1010 (1980); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 614, 372 F.2d 1002, 1012–13 (1967). Similar negation is, at least, implied here. Congress has had a recent opportunity to review the jurisdiction of this court with the specific intent of eliminating confusion as to the jurisdictional demarcation between the CIT and the federal district courts, but Congress did not give the CIT, vis-à-vis the district court, either concurrent or exclusive jurisdiction over § 545 *in rem* forfeiture actions. 28 U.S.C. § 1582; H.Rep. No. 96–1235, 96th Cong., 2nd Sess., 47–49, *reprinted in* 1980 U.S.CODE CONG. & AD.NEWS 3758–61.

**4.** It is unclear what plaintiff means by the term "exclusive" in this context. In one sense, plaintiff's argument is circular. If this court exercises jurisdiction, it will have ruled that the district court's jurisdiction is not exclusive. In any case, this court does not rule on the issue of whether or not the district court's jurisdiction over § 545 claims is exclusive in relation to all other federal courts.

**5.** The distinctions between ancillary and pendent jurisdiction are unclear. *Birmingham Fire Insurance Co. v. Winegardner and Hammons, Inc.*, 714 F.2d 548, 550 n. 3 (1983); *see, e.g., Aldinger v. Howard*, 427 U.S. 1, 13, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976). Thus far, the Supreme Court has declined to decide if there are any "principled" differences between ancillary and pendent jurisdiction. *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365,

Rather, it gave this court jurisdiction over § 592 penalty claims.[6]

■ Moreover, § 545 and § 592 claims are not related on an occasional basis only. Time and again such claims will arise out of the same set of facts. Congress obviously could perceive this, yet it gave this court no jurisdiction of any type over § 545 civil claims. In *Gibbs'* terms the § 592 action here is a "substantial claim," and both the § 592 and § 545 claims "derive from a common nucleus of operative fact," but the third *Gibbs* factor is missing. That is, plaintiff would not "ordinarily be expected to try [both claims] in one judicial proceeding." Such an expectation would be unfounded in light of the jurisdictional framework established by Congress.[7] Thus, whether plaintiff seeks this court's jurisdiction over its § 545 claim on the basis of ancillary jurisdiction as it did in *Gold Mountain Coffee,* or on the basis of pendent jurisdiction as it did here, no such jurisdiction seems appropriate.

Another doctrine which is commonly applicable to issues arising in both federal and state courts is that of abstention. There is authority that a federal court may abstain from deciding an issue properly before that court when the issue involves an area of unsettled state law. *See Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940) (bankruptcy court ordered to consent to submission of question of unsettled state property law to state court); *United Services Life Insurance Co. v. Delaney,* 328 F.2d 483, (5th Cir.), *cert. denied,* 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298, *reh'g denied,* 377 U.S. 973, 84 S.Ct. 1644, 12 L.Ed.2d 743 (1964) (decision stayed until state court ruled on area of unclear state law); *White v. Husky Oil Co.,* 266 F.Supp. 239 (D.Mont.1967) (action stayed pending

determination by state court of unclear state law); *Richey v. Sumoge,* 257 F.Supp. 32 (D.Or.1966) (proceedings stayed to allow state court to determine legality of service of process under state law); *see also Lehman Brothers v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (diversity case where Court remanded for consideration whether unclear question of state law should be certified to state court); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (action stayed until state court had opportunity to construe confused state statute); *cf. Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (abstention invoked to avoid needless conflict with the state's administration of its own affairs).

Although the federal courts in the cases cited above had jurisdiction over state law claims pursuant to federal statutes, they declined to exercise such jurisdiction—usually because controlling state law was undecided. Assuming this court has the power to exercise pendent jurisdiction in this case, similar considerations weigh against exercising such nonstatutory jurisdiction. The § 545 claim here raises important unresolved issues of law. For example, there are no criminal proceedings regarding the facts involved here, and it remains an open question whether civil forfeiture under § 545 must be connected to district court criminal proceedings. *See One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 234 n. 3, 93 S.Ct. 489, 491 n. 3, 34 L.Ed.2d 438 (1972); *Gold Mountain Coffee,* 597 F.Supp. at 514 n. 5. It is also undecided whether the burden of proof in a § 545 action is different from that involved in a § 592 action.[8] Thus, this

---

370 n. 8, 98 S.Ct. 2396, 2400 n. 8, 57 L.Ed.2d 274 (1978).

**6.** Section 592 claims are normally *in personam. United States v. Gold Mountain Coffee, Ltd.,* 597 F.Supp. 510, 515, *reh'g denied,* 601 F.Supp. 212 (1984), and discussion *infra.*

**7.** Judicial economy might best be served by concurrent jurisdiction of the district court and this

court over § 545 civil claims, since such claims are as likely to be related to district court § 545 criminal proceedings, as they are to § 592 actions. But Congress has never given this court concurrent jurisdiction. Therefore, such jurisdiction may not be implied easily.

**8.** Plaintiff's assertion that the issues in the two actions are identical is, therefore, in some doubt.

court would be presented with issues of, perhaps, first impression in an area over which the district court, by statute, has jurisdiction. Whether or not "abstention" is a useful analogy, discretion would seem to indicate that one of the courts specifically empowered to hear § 545 claims be given an opportunity to determine the essential features of such claims.

Plaintiff's second argument relates to the nature of the imported merchandise. It is admitted that the subject automobile did not comply with EPA emission standards and therefore did not conform to mandatory requirements of the Clean Air Act, as amended. *See* 19 C.F.R. §§ 12.73(b)(5)(ii) and (f) (1982).[9] Plaintiff apparently would characterize such an automobile as dangerous or inherently illegal.[10] Plaintiff suggests that the court in *Gold Mountain Coffee* recognized the possibility of jurisdiction over a § 545 forfeiture in the case of such illegal or dangerous goods. The court, however, was not faced with the issue of dangerous merchandise in *Gold Mountain Coffee*. The discussion in that opinion of illegal and dangerous merchandise took place in the context of a discussion of the relationship of § 545 forfeitures to criminal proceedings, and the court suggested a possible exception, in the case of goods which are illegal *per se*, to any requirement of collateral criminal proceedings.

Whether or not pendent jurisdiction over the § 545 claim will be exercised involves the factors discussed previously, no matter what type of merchandise is involved. In the case of dangerous goods, plaintiff might argue that jurisdiction is necessary to prevent such goods from entering the commerce of the United States. But plaintiff has not demonstrated an inability to obtain such relief pursuant to statutes within this court's jurisdiction, by means of a § 545 proceeding in district court or by administrative means. Accordingly, there is no showing of a necessity for pendent jurisdiction over the § 545 claim and, therefore, plaintiff's motion rests solely on the basis of efficient use of judicial and legal resources. Given the previous discussion of Congressional intent and of the considerations relating to pendent jurisdiction, the court declines to exercise pendent jurisdiction over a § 545 claim on the facts of this case.

The court turns now to defendant Tabor's motion to dismiss.[11] Apart from its right to forfeiture as a means of satisfying any unpaid money judgment, plaintiff's remaining claim for forfeiture of the automobile at issue arises by alleged implication from the words of § 592(c)(5).[12] Plaintiff

---

**9.** 19 C.F.R. §§ 12.73(b)(5)(ii) and (f) (1982) provide:

ENTRY OF MOTOR VEHICLES AND MOTOR VEHICLE ENGINES UNDER THE CLEAN AIR ACT, AS AMENDED.
§ 12.73 Federal motor vehicle air pollution control.
... (b) *Requirements for entry and release.* Each motor vehicle or motor vehicle engine offered for importation or imported into the Customs territory of the United States shall be refused entry unless there is filed with the entry, in duplicate, a declaration verified by the importer or consignee which contains:
... (5) A statement that:
... (ii) Such 1971 or subsequent model year motor vehicle or motor vehicle engine is covered by a certificate of conformity with Federal motor vehicle emission standards and is tagged or labeled in accordance with applicable regulations in 40 CFR Part 85; or
... (f) *Prohibited importations.* The importation of motor vehicles and motor vehicle en-

gines, otherwise than in accordance with the provisions of this section, is prohibited.

**10.** The "prohibited" nature of the automobile relates more directly to § 592 remedies and is not determinative with regard to the motion under consideration. Plaintiff concedes that forfeiture based solely on the "prohibited" nature of goods is not warranted under § 592, and that Count V of its complaint should be dismissed.

**11.** The motion was filed in response to the direction of the court to the parties to file memoranda discussing *Gold Mountain Coffee's* impact on plaintiff's *ex parte* motion for an order designating a newspaper for publication of a notice of arrest and auction of the automobile in question. An arrest warrant had already issued. Defendant seeks to have that warrant quashed.

**12.** Section 592(c)(5) provides as follows:
 **(c) Maximum penalties**

states that the statute intends that the automobile be forfeited because defendant Tabor did not pay the administratively determined penalty within the time set by the Secretary of the Treasury or his delegee.

■ There is agreement that under § 592 the goods will be "forfeited" if the penalty is not paid "within the time specified by law." Plaintiff argues, however, that the "time specified by law" in this case is the time administratively set by the Secretary. Plaintiff cites as the relevant "law" 19 C.F.R. § 171.32, which provides *inter alia* for payment of mitigated penalties within a specified period. If under plaintiff's theory defendant is liable for forfeiture not because the goods were prohibited, but merely because it sought a mitigation ruling and disagreed with the result, requests pursuant to 19 U.S.C. § 1618 (1982) for mitigation of penalties certainly would be chilled. Of course, plaintiff's theory would only have this effect if mitigation proceedings were the only administrative proceedings to which the phrase "within the time specified by law" applies. Plaintiff has cited no other "time specified by law." As Tabor indicates, the purpose of § 1618 was to benefit the owner of seized merchandise. The court in *United States v. Eight Rhodesian Stone Statutes*, 449 F.Supp. 193, 202 (C.D.Cal.1978), stated the purposes of § 1618 as follows:

> [F]irst to permit an administrative review of the propriety of the seizure and the equities involved before any formal court action begins, and second, to give a claimant to seized property a *quick, expeditious* method of getting his property back without the necessity of hiring a lawyer to defend a court proceeding.

(emphasis added).

Plaintiff's reading of the statutes does not serve these purposes.

Even if there is no chilling effect because other "time[s] specified by law" in the administrative process are applicable, plaintiff's interpretation is not in keeping with the notion that plaintiff may freely litigate the basis and amount of penalties in this court. *See* 19 U.S.C. § 1592(e) (providing for trial *de novo* on all issues). It is not clear whether plaintiff is asserting that defendant's right to trial *de novo* on liability is lost because the mitigated penalties were not paid. At the very least, plaintiff's view mandates a specific type of penalty, that is, sale of the seized goods. There is nothing in § 1618, or in any cited provision regarding administrative proceedings, which indicates that resort to administrative remedies will limit the right to a trial *de novo* regarding all issues, pursuant to § 592(e). In fact, § 592(e) indicates that trial will be *de novo* "[n]otwithstanding any other provision of law."

In addition, plaintiff's reading of § 592(c) is difficult to reconcile with its own regulatory scheme. First, forfeiture cannot occur in a case involving more than $10,000 without court action. 19 C.F.R. § 162.75(d)(3). In this case, involving in excess of $10,000, plaintiff would have to obtain a judgment to be entitled to forfeiture. (There is no indication in § 592, that forfeiture, rather than seizure, is intended as a prejudgment remedy.) Second, under 19 U.S.C. § 1613(b) (1982), plaintiff is not entitled to retain more than the amount of the adjudi-

---

**(5) Seizure**

If the Secretary has reasonable cause to believe that a person has violated the provisions of subsection (a) of this section and that such person is insolvent or beyond the jurisdiction of the United States or that seizure is otherwise essential to protect the revenue of the United States or to prevent the introduction of prohibited or restricted merchandise into the customs territory of the United States, then such merchandise may be seized and, upon assessment of a monetary penalty, forfeited unless the monetary penalty is paid within the time specified by law. Within a reasonable time after any such seizure is made, the Secretary shall issue to the person concerned a written statement containing the reasons for the seizure. After seizure of merchandise under this subsection, the Secretary may, in the case of restricted merchandise, and shall, in the case of any other merchandise (other than prohibited merchandise), return such merchandise upon the deposit of security not to exceed the maximum monetary penalty which may be assessed under subsection (c) of this section.

cated monetary penalty, even if the goods are "forfeited." Thus, if plaintiff were willing to immediately satisfy a monetary penalty judgment, sale of the goods under a claim of "forfeiture" would be a useless act. On the other hand, one might argue that Customs is entitled to sell the goods, even though it must return the excess proceeds, because Congress intended in this way to punish those who fail to pay administratively determined penalties timely. Neither penalties nor forfeitures, however, may be implied, rather they must be specifically provided. *See Stapleton v. Two Million Four Hundred Thirty-Eight Thousand, One Hundred and Ten Dollars*, 454 F.2d 1210, 1216 (3rd Cir.1972); *Baca v. Commissioner of Internal Revenue*, 326 F.2d 189, 191 (5th Cir.1964); *Warner v. United States*, 301 F.2d 327, 329, 157 Ct.Cl. 1, 5 (1962). If Congress intended that plaintiff pay the penalties prior to suit by the government in order to avoid potential forfeiture liability, it would have made this clear either in the statutes allowing suit in this court or in § 1618.

Section 19 U.S.C. § 1613(b) makes it clear that the word forfeiture in § 592(c)(5) is not used in the common sense of loss of the value of goods irrespective of the value of the monetary claim of plaintiff. A different type of "forfeiture," one tied to the value of plaintiff's claim, is intended. In regard to this type of case, Congress appears to have provided a particular, but nonexclusive, manner for satisfaction of a judgment. This seems to be the only way to read § 592(c)(5), 19 U.S.C. § 1613(b), 19 U.S.C. § 1618, and the relevant regulations together in a logical manner.[13] Accordingly, the court finds that Congress did not intend forfeiture as a remedy which is distinct from monetary penalties, and which may be stated as a separate claim in a case such as this.

█ Finally, defendant Tabor seeks dismissal of the entire action on the basis of excessive delay. Tabor alleges laches and due process grounds. First, laches will not provide an adequate defense when the United States, acting in its sovereign capacity, sues on a statutory cause of action. *Costello v. United States*, 365 U.S. 265, 281, 81 S.Ct. 534, 542, 5 L.Ed.2d 551 (1961); *Lane v. United States*, 639 F.2d 758, 761, 226 Ct.Cl. 303 (1981). Second, since all forfeiture claims are to be dismissed, and the arrest warrant quashed, it is not necessary to address defendant's due process ground for dismissal of the forfeiture claims. Therefore, the only question remaining as a result of the motion to dismiss is whether the delay in filing suit provides the basis for an adequate non-laches defense to the monetary claims.

█ The parties are in agreement that *United States v. Eight Thousand Eight Hundred and Fifty Dollars*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), provides the basic guidance in this matter. As indicated by defendant, delay in bringing suit to allow for administrative action with regard to seized goods is allowed. *Eight Thousand*, 461 U.S. at 566, 103 S.Ct. at 2013. But unreasonable administrative delay is not permitted under due process principles. *Eight Thousand*, 461 U.S. at 567, 103 S.Ct. at 2013. Plaintiff argues that Tabor could have asked for immediate referral for suit, thereby avoiding all administrative delay. But plaintiff does not indicate whether Tabor could have obtained referral for suit during the administrative process, when delay became apparent. Apart from this legal question and the question of the applicability of the Supreme Court's decision to a penalty (rather than a forfeiture) case, there remain num-

---

**13.** If 19 C.F.R. § 162.75(d)(3)(2), allowing summary forfeiture in cases of $10,000 or less, is valid, no judgment is necessary in such cases.

In this case, 19 C.F.R. § 162.75(d)(3)(1) precludes summary forfeiture even if the statute could be read to permit it.

erous factual questions regarding the conduct of the administrative proceedings. Therefore, dismissal on the basis of unreasonable delay is not appropriate at this time.

Accordingly, plaintiff's motion to amend the complaint is denied. Counts IV and V

of the complaint are dismissed and the arrest warrant previously issued is quashed.