**GOLDEN GATE AUDUBON SOCIETY, INC., et al., Plaintiffs,**

**v.**

**UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants.**

### No. 87–6063 TEH.

United States District Court, N.D. California.

Aug. 30, 1988.

**340**

Zach Cowan, San Francisco, Cal. and Alan Waltner, and Thomas Roy Gorman, Gorman & Waltner, Oakland, Cal., for plaintiffs.

Gail Cooper, U.S. E.P.A., Office of the Gen. Counsel, Karen L. Egbert, Environmental Defense Section, Donald A. Carr, Acting Asst. Atty. Gen., Karen L. Egbert, Thomas R. Lotterman, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., and Joseph P. Russoniello, U.S. Atty. and Francis B. Boone, Asst. U.S. Atty., San Francisco, Cal., for other defendants.

Benjamin F. Wilson, Don G. Scroggin, and Brenda Mallory, Beveridge & Diamond, Washington, D.C., for City of Oakland, Port of Oakland and Bd. of Port Com'rs.

## ORDER GRANTING FEES

THELTON E. HENDERSON, District Judge.

This matter comes before the Court on plaintiffs' motion for attorneys fees, following our Order of June 10 granting summary judgment to plaintiffs on their second cause of action. After careful consideration of the parties' papers, including the supplemental briefs requested by the Court, we hereby award fees of an unspecified amount to be paid by the U.S. Army Corps of Engineers ("Corps".) The parties shall meet and confer to determine the precise amount of fees due in accordance with this Opinion.

*I. Fees Against the Corps.*

1. Appropriate Fee–Shifting Statute.

We must first address which statute, if any, may be invoked to award fees to the plaintiffs. In our June 21, 1988 Amended Order, we found that we had jurisdiction over this case by virtue of the Clean Water Act, 33 U.S.C. § 1365(a)(1) and the Administrative Procedure Act (APA), 5 U.S.C. § 706 (via the general federal question statute, 28 U.S.C. § 1331). Congress has enacted fee-shifting statutes for parties who prevail under either of these acts. *See* fee-shifting provision in the Clean Water Act, 33 U.S.C. 1365(d), and the Equal Access to Justice Act, 28 U.S.C. § 2412 for suits brought under the APA.

█ Plaintiffs did not sue the Corps under the enforcement section of the Clean Water Act; nor could they do so, since that section allows suits against entities who are themselves in violation of an effluent standard or limitation. 33 U.S.C. § 1365(a).

Plaintiffs urge that fees may still be awarded against the Corps under section 1365, because the Corps created a defense to the plaintiff's enforcement action against the Port of Oakland by disclaiming jurisdiction over the Distribution Center.

We must reject this argument. Section 1365(a)(1) is a private enforcement section which enables private citizens to sue private polluters and government agencies *qua* polluters. The section was not intended to allow citizens to challenge discretionary action of the government *qua* environmental regulator. That intent is apparent from the plain language of that section permitting citizens to sue "any person (including (i) the United States ...) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter ..." It is also revealed by passage of the following subsection, which allows suits against the EPA for its failure to perform a nondiscretionary duty. 33 U.S.C. § 1365(a)(2). Subsection (2)'s limitation would become superfluous if citizens could sue the EPA under subsection (1) for failing to perform discretionary duties.

Since plaintiffs could not sue the Corps directly under section 1365(a)(1), it follows that we may not assess fees against the Corps under the Clean Water Act.

However, the EAJA is a perfectly appropriate fee-shifting statute. That statute allows a court to award fees to a prevailing private party who has brought or defended a suit against the United States unless the court finds that the government's position was "substantially justified."[1] 28 U.S.C. § 2412(d)(1)(A). Therefore, we will analyze the remaining disputed issues under the EAJA.

### 2. Final Judgement Requirement.

■ Section 2412(d)(1)(B) states that "[a] party seeking an award of fees and expenses shall [submit a fee application] with-

in thirty days of final judgment in the action."

The federal defendants construe this latter subsection to require the issuance of a final judgment before fees may be awarded. We do not agree. The House Committee report explicitly states that this subsection "should not be construed as requiring a final judgment on the merits before a court may award fees." H.R.Rep. No. 1418, 96th Cong., 2d Sess., 18, *reprinted* in 1980 U.S.Code Cong. & Adm.News 4953, 4997. Instead, "[a] fee award may ... be approved where the party has prevailed on an interim order which was central to the case." *Id.* at 4990.

Numerous courts interpreting the EAJA have awarded interim fees. For example, in *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1495 (11th Cir.1986), *vacated in part regarding unrelated fees on fees portion*, 804 F.2d 1573 (11th Cir.1986), the court approved a fee award under the EAJA even though the district court denied the defendant's Rule 58 motion for entry of judgment. Similarly, in *Young v. Pierce*, 822 F.2d 1376, 1377 (5th Cir.1987), the court upheld a fee award after plaintiffs won summary judgment on liability, but had not yet litigated the remedies phase.[2]

Thus, the EAJA does not require the issuance of a final judgment. Instead, the test is whether the moving party has prevailed "on the merits of an issue central to their lawsuit." *Ray v. The Florida Cabinet*, 845 F.2d 311, 313 (11th Cir.1988).

### 3. Prevailing Party Determination.

■ This test brings us to the defendants' second—and stronger—argument: they contend that plaintiffs have not yet prevailed in this litigation.

Both the Port and the federal defendants argue that we have merely remanded an erroneous agency determination for fur-

---

1. The federal defendants do not argue that the jurisdictional disclaimer was substantially justified and do not oppose a fee award on that grounds.

2. We know of no contrary Ninth Circuit case. *Auke Bay Concerned Citizen's Advisory Council*

*v. Marsh*, 779 F.2d 1391, 1393 (9th Cir.1986) concerns the procedural question of whether a fee motion may be filed before or after issuance of a court's order; it does not address the substantive question of the appropriate stage in the litigation for a fee award order.

ther agency review. The agency may ultimately uphold its jurisdictional disclaimer; in that event, plaintiffs' prior success before this Court would constitute a hollow procedural victory. Defendants rely heavily on *Nat. Coal. Against Misuse of Pesticides v. Thomas*, ("NCAMP") 828 F.2d 42 (D.C.Cir.1987). In that case, the court initially held that the EPA acted arbitrarily and capriciously in establishing a high tolerance level for the pesticide EDB. Specifically, the court ruled that the EPA impermissibly cited relations with foreign countries as a reason for setting a high EDB tolerance level. Rather than vacate the EPA's decision, the court directed the EPA to reconsider and decide whether that same level could be justified on other grounds. *Id.* at 43. In a subsequent opinion, the court upheld the EPA's decision to maintain that same level, this time based properly on health concerns. *Id.* at 44.

The plaintiffs then moved for attorneys fees, arguing that they prevailed by obtaining a remand order and judicial declaration that the EPA improperly relied on international relations factors. The court rejected this argument. The court first stated that the fee claiming party "must show that the 'final result represents in a real sense a disposition that furthers their interest.'" *Id.* at 44, quoting *Grano v. Barry*, 783 F.2d 1104, 1108 (D.C.Cir.1986). The court must "'focus on the precise factual/legal conduct that the fee claimant has sought to change, and then determine if the outcome confers an actual benefit or release from burden.'" 828 F.2d at 44, quoting *Grano*, 783 F.2d at 1108–1109. Since the plaintiff's "real interest" was to ban or limit the use of EDB, and they did not achieve that goal, the court found that they were not the prevailing parties. The court stated that "procedural victories of this sort" do not qualify plaintiffs as prevailing parties. *Id.* at 44.

The facts of *NCAMP* resemble the facts of this case: here, we have found an agency's decision to be arbitrary and capricious, and have remanded the decision to the agency. While we have not upheld a second agency decision, as the court did in *NCAMP*, it is possible that we may do so.

We note the similarities of the two cases. But we believe that *Oregon Environmental Council v. Kunzman*, 817 F.2d 484 (9th Cir.1987) states the differing law of this circuit.

In *Kunzman*, plaintiffs sued the EPA to enjoin the spraying of a pesticide that combats gypsy moth infestation. In the first phase of the litigation, the district court enjoined the spraying upon a finding that the EPA-prepared environmental impact statement (EIS) was inadequate. The district court granted interim fees for that victory. *Id.* at 489. In phase two of the litigation, plaintiffs challenged a second EIS, which the defendants vacated and withdrew shortly before trial. *Id.* at 490. In phase three, the EPA issued a third EIS, which the court also found deficient. In phase four, the EPA issued an addendum to the third EIS; the court upheld that final EIS and lifted the injunction.

Plaintiffs moved for fees for work performed in, *inter alia*, phase two of the case. The district court denied the fee request. It found that "although this litigation had some effect on the government's decision to supplement the [second] EIS, it was not the cause for the supplementation." *Id.* at 497.

The Ninth Circuit reversed and remanded the fees decision. The court stated that plaintiffs would be entitled to fees if they could show that the litigation was a "material factor" or played a "catalytic role" in obtaining the withdrawal of the second EIS. *Id.* Thus, the Ninth Circuit authorized fees for plaintiffs' action, even though plaintiffs never achieved their ultimate goal—the banning of the spraying, and "only" achieved an interim withdrawal of an EIS.

Similarly, in *National Wildlife Federation v. Hanson*, 18 ELR 20008, 20009 (E.D. N.C.1987), *appeal pending*, the court awarded fees to plaintiffs for a reversal and remand of a Corps' jurisdictional disclaimer similar to the one in this case. The court awarded fees, even though the plaintiffs had no assurance that the Corps

would ultimately find that the site contained wetlands.

We believe that *Kunzman* and *Hanson* represent the better view of what constitutes success in environmental litigation. Under our system of government, federal, state, and local authorities have the primary responsibility for enforcing environmental statutes. The role of the judiciary is ordinarily limited to ensuring that an agency considers the relevant factors and weighs conflicting factual evidence in a rational manner. 5 U.S.C. § 706(2)(A); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 904 (5th Cir.1983). As a result of this allocation of power, environmental litigation is "essentially procedural"; lawsuits are brought primarily to ensure that an agency properly does its job. *Kunzman, supra*, 817 F.2d at 492. Environmental plaintiffs frequently do not achieve their ultimate end—the cessation of an environmentally damaging activity—through a court order.

Accordingly, plaintiffs "prevail" when they obtain a court judgment that identifies a substantial flaw with an agency's interpretation of law or weighing of facts. This is not to say that fees should be awarded every time a court "flyspecks" an agency record and finds some minor problem with it.

But plaintiffs did much more than that in this case.

They obtained a ruling that the Corps' jurisdictional disclaimer was arbitrary and capricious. We declared that the Corps' interpretation of the "normal circumstances" language of 33 C.F.R. 328.3(b) if upheld, would eviscerate a central goal of the Clean Water Act. June 21 Order at 13. Our remand order now removes the Port's defense to the enforcement action, and requires the Corps to re-examine the history of the site and make a wetlands determination in accordance with this Court's interpretation of the regulation. Our order also instructs the Corps to closely examine the

Huffman and Williams reports and seek the participation of plaintiffs in the remand proceedings. Order at 16–17. This achievement is no hollow, procedural victory; plaintiffs prevailed on one of the central issues in this litigation, the invalidity of the Corps' disclaimer and interpretation of the normal circumstances language.

While plaintiffs have not yet achieved their ultimate goal of stopping the dredging and filling operation, they have substantially achieved some of the benefits they have sought. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). We therefore find that they are the prevailing parties in this litigation, and the award of interim fees is appropriate.[3]

### 4. Hourly Rates.

■ The EAJA limits hourly rates to $75, "unless the court determines that an increase in the cost of living or a special factor, such as limited availability of qualified attorneys for the proceeding involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiffs claim an entitlement to a $160/hour rate, arguing that their environmental practice is sufficiently specialized to limit the pool of qualified attorneys.

Plaintiffs cite the recently decided *Pierce v. Underwood, et al.*, 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988). In *Pierce*, the district court awarded an hourly rate above the $75 limit, finding that a limited availability of attorneys justified the increase. *Id.* at 570–71, 108 S.Ct. at 2552–53. The Supreme Court reversed and remanded; it also clarified the meaning of limited availability.

The court held that limited availability did not refer simply to attorneys of exceptional general talent or skill. Instead, the term "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question," such as

---

**3.** We have considered the Corps' argument that we should not impose fees upon them since they asked for a remand. However, as we noted in our June 21 Order, the Corps did not voluntarily vacate the prior jurisdictional disclaimer. Their failure to do so made the plaintiffs' summary judgment motion necessary.

expertise in patent law or international law. *Id.* at 572, 108 S.Ct. at 2554.

We find that the law firm of Gorman and Waltner fits within this definition. Environmental practice in general, and this litigation in particular, demands a high level of expertise with difficult, even opaque statutes and regulations. Having adjudicated the summary judgment and dismissal motions in this case, this Court is excruciatingly aware that this is not the type of litigation that a general practitioner—even a highly skilled one—could have successfully pursued without spending large amounts of time gaining background preparation and specialized knowledge.

As their resumes and performance in this case reveal, Gorman and Waltner did have the expertise to pursue this case. Both attorneys have spent years litigating environmental cases on behalf of state and federal governmental agencies, public interest firms, and private citizens. That expertise paid off in this litigation, since distinctive knowledge was needed to vigorously and competently pursue this litigation.

Thus, we find that the limited availability exception to the $75 limit applies to this case; we approve the requested hourly rate of $160.

### 5. Compensable Hours.

■ The parties also dispute the number of hours claimed by the plaintiffs. To adjudicate this dispute, we would need considerably more precise information about the hours claimed. While the burden is on the party moving for fees to demonstrate that the requested hours are reasonable, *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1983), there is a trade-off in requiring too high a level of specificity: it is costly and time-consuming to reconstruct the minutiae of an attorney's time records. Rather than use up the parties' or the Court's time adjudicating this issue, we instruct the federal defendants and plaintiffs to meet and confer on a reasonable number of compensable hours. Should this informal mechanism fail, we will decide the proper number of hours.

We remind the parties that their costs of litigating that issue further may very well exceed the amounts either party could expect to gain from that additional litigation.

### 6. Liability of the Port.

■ Plaintiffs also seek to allocate a portion of their fee award against the Port. The first cause of action is an enforcement claim under the CWA. In Our June 21 Order, we stayed that first cause of action, at least until the Corps makes a second wetlands determination. Plaintiffs contend that the reversal and remand on the second cause of action removes the Port's defense to the first cause of action, and therefore entitled them to fees against the Port.

The Port raises numerous defenses, but we need only consider one at this time: plaintiffs have not yet "prevailed" against the Port.

In a prior portion of this Opinion, we found that plaintiffs had prevailed against the Corps because they demonstrated an important error in the jurisdictional disclaimer, and persuaded us to perform the corrective role of ensuring agency fidelity to an environmental statute.

This same logic does not apply to assessing fees against the Port. Plaintiffs have won only a temporary victory against the Port: we have stayed, and not resolved, the cause of action directed at the Port. If the Corps renews its jurisdictional disclaimer, and plaintiffs are unsuccessful in further challenges, the plaintiffs will have won no lasting victory from the Port. They will have only temporarily removed the Port's defense to the enforcement action without obtaining a court or agency order against the Port's dredge and fill operation.

Therefore, we reject plaintiffs' interim fee application against the Port. We will reconsider this denial should the results of further proceedings make such reconsideration appropriate.

IT IS SO ORDERED.