UNITED STATES of America, Plaintiff,

v.

DANTZLER LUMBER & EXPORT COMPANY, a Florida corporation (a/k/a Dantzler Lumber & Export Company, Inc. a/k/a Dantzler Lumber and Export Company a/k/a Dantzler Lumber & Export Co. a/k/a Dantzler Lumber & Export Inc. a/k/a Dantzler Building Specialties,. Inc. a/k/a Dantzler Building Specialties Div., Inc.), and Antonio D. Godinez, Defendants.

Court No. 90–11–00600.

United States Court of International Trade.

Sept. 29, 1993.

**928**

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Civ. Div., Patricia L. Petty, Washington, DC, for plaintiff.

Fotopulos, Spridgeon & Perez, P.A., Thomas E. Fotopulos, Tampa, FL, for defendants.

### OPINION & ORDER

AQUILINO, Judge:

The background of this case brought by the government pursuant to 19 U.S.C. § 1592 and 28 U.S.C. § 1582 is set forth in slip opinions of the court numbered 92–222, 16 CIT ——, 810 F.Supp. 1277 (1992); 93–36, 17 CIT ——, 1993 WL 79496 (March 15, 1993); and 93–120, 17 CIT ——, 1993 WL 248619 (June 25, 1993), familiarity with which is presumed. The latest of those decisions stated that the chief judge had ordered trial of the case to commence on July 8, 1993 in the

U.S. district courthouse in Tampa, Florida. On July 7th, the attorneys for both sides notified the court that they had reached agreement on settlement of the issues remaining for trial[1], whereupon they were directed by order dated July 8, 1993 to present a proposed final judgment disposing of this case in its entirety on or before July 30th.

That deadline was adopted to afford the plaintiff government ample time to approve the settlement negotiated by its lawyers from the Department of Justice and the regional office of the Customs Service. The plaintiff did not meet the deadline, causing its counsel (1) to file a motion on July 30th for an extension of time upon a representation that the agency had not yet forwarded its recommendations regarding the proposed settlement and (2) to thereafter file a report on September 3, 1993 stating, among other things, that on August 31st "the Government rejected the proposed settlement offer submitted by the defendants." Since that report also indicated that counsel had first been contacted by their client on August 24th, recommending that the settlement offer not be accepted, a hearing was ordered held in open court on September 23, 1993 to afford Customs an opportunity to prove that it had not been delinquent.[2] It did not do so.

### I

At the hearing, the plaintiff presented argument and offered ten documentary exhibits, the first of which is a written declaration of Richard S. Friedland, the Senior Attorney in the Office of the Regional Counsel for the Southeast Customs Region, who has appeared "of counsel ... and been fully aware and involved in the developments pertaining to this case." Exhibit 1, para. 8. As his title indicates, Mr. Friedland's declaration confirms that he has had "significant experience"[3] in matters of this kind and also that he was privy to the settlement discussions and that the court was indeed informed on July 7th that plaintiff's trial attorney and he

---

1. *In limine* motions had resulted in grant of partial summary judgment for each side per slip op. 92–222.

2. The parties had been warned by the court last spring that this case would be tried in either July

or September of this year to accommodate a prediction that 3–4 weeks might be needed for trial and the press of other cases.

3. Exhibit 1, para. 3.

"would recommend the settlement offer"[4] to their respective superiors. At the hearing, which Mr. Friedland did not attend, and in his declarations[5], counsel are pained to prove that they neither overstepped their authority nor led the court to believe otherwise.

The court concurs, and so stated at the hearing. But the court also therefore stated that the concern is not the conduct of the lawyers, rather of their clients, in this instance primarily the Customs Service. An attorney in the office of its chief counsel in Washington, D.C., which is where the settlement apparently foundered, attended the hearing, but, when offered an opportunity by the court to be heard, he declined. The plaintiff thus rests on the legal arguments presented and on the exhibits submitted, the second of which is nothing more than a copy of that part of Chapter I of 28 C.F.R. which sets forth the regulations governing settlement of cases by government attorneys. The remainder of the exhibits are copies of correspondence dating from September 28, 1992 and memorializing discussions between opposing counsel covering settlement, among other topics. Exhibit 7, for example, a letter from the Justice Department to defendants' attorney dated July 23, 1993, warned him on the one hand of the impending deadline and yet sought at that late moment to change the terms of the agreement on the other, to wit:

As you are aware, we must present to the Court on or before July 30, 1993[ ] "a proposed final judgment disposing of this case in its entirety." That is one week from today. The lack of any response to my attempts in communicating our concerns suggests that the settlement offer is in jeopardy, or that you do not intend to comply with the Court's order. As I have explained on previous occasions, the financial information is important to our decision whether to accept any settlement offer less than the mitigated penalty. Enclosed is another copy of the letter with our requests. Please forward the requested information immediately.

We are also interested in an amendment to the terms of the settlement offer. We suggest that the offer be changed to provide that the defendants at the time of execution of the settlement agreement will make a deposit of [amount redacted]. The balance would be paid over a four-year term, instead of the proposed five-year term, at seven (7) percent interest, and would be secured by a deed of trust, with the United States as trustee, to unencumbered property of equal or greater value than the balance.

Suffice it to conclude that this and the other copies of correspondence offered do not justify plaintiff's noncompliance with the court's order of July 8, 1993. The entries underlying this case occurred years ago. They gave rise to a criminal indictment in district court, a trial thereon and appeal therefrom. That process led to this one and, seemingly, to settlement discussions a year ago, if not longer, among able and experienced lawyers. The problem is not that their agreement has not been approved; rather the plaintiff, which has and has had the burden of proceeding, having inconvenienced this and the district court in Tampa in July, in failing to provide timely notice of its approval or disapproval as ordered, has engendered additional delay and inconvenience[6] in this case of its own creation.

## II

In conjunction with the hearing, on their part the defendants have filed a Motion to

---

4. *Id.,* para. 12.

5. The court is in receipt of a second declaration dated September 28, 1993 in which Mr. Friedland sheds further light on his actions, including the taking of annual leave from July 16–27, 1993, as well as on those of the Service. According to paragraph 6 of this declaration, he prepared a memorandum in support of the settlement, which on July 14, 1993 "was approved by the Acting Regional Counsel and sent by telephone facsimile to the Office of the Chief Counsel."

6. For example, at the hearing plaintiff's trial attorney referred to the logistical difficulties in summoning witnesses anew from around the United States and overseas, especially in view of the more than 100 individuals listed in the proposed pretrial order.

On its part, the court had summoned potential jurors to Tampa on July 8, 1993.

Enforce Settlement Agreement, which outlines the negotiations commencing on September 24, 1992 and which represents, among other things, that the terms to which they ultimately agreed were those "solicited" by the government and that, if "the settlement agreement reached between the parties on July 7, 1993 is not enforced, the Defendants will suffer extreme prejudice." The motion concludes:

14. The Defendants negotiated the settlement agreement in good faith, with counsel of record for the ·Plaintiff, who conducted all settlement negotiations on behalf of her client, and who had the apparent authority to reject two prior offers in compromise. The Defendants are ready, willing, and able to consummate and perform the agreement.

### A

This may be. Indeed, the defendants have disclosed in the motion the terms and conditions which they accepted. They pray for specific performance thereof. To this end, the motion cites *United States v. Beebe,* 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901); *Amin v. Merit Systems Protection Board,* 951 F.2d 1247 (Fed.Cir.1991); *Matzo v. Postmaster General,* 685 F.Supp. 260 (D.D.C. 1987); *Capital Dredge & Dock Corp. v. City of Detroit,* 800 F.2d 525 (6th Cir.1986); *Wong v. Bailey,* 752 F.2d 619 (11th Cir.1985); *Read v. Baker,* 438 F.Supp. 732 (D.Del.1977); *Walden v. Sanger,* 250 S.W.2d 312 (Tex.Civ.App. 1952), and 30 A.L.R.2d 953, § 10.

■ These cases do indeed stand for the proposition that the court can enforce a settlement agreement, as a rebuttable presumption exists that an attorney of record who agrees to a compromise has authority to do so. *E.g., Amin v. Merit Systems Protection Board,* 951 F.2d at 1254, finding that the plaintiff failed to present sufficient evidence that his attorney did not have authority to settle a removal action with the Board; *Walden v. Sanger,* 250 S.W.2d at 316, holding that no abuse of discretion existed when the court overruled a motion for a new trial after the attorney of record for the plaintiff signed a compromise agreement, requested the court's approval and failed to raise any ques-

tion as to authority to sign the agreement until after judgment had been entered; *Wong v. Bailey,* 752 F.2d at 621, upholding a district court judgment to enforce a settlement agreement to which the plaintiff's trial attorney initially agreed orally, objecting later during finalization to the inclusion of a general release clause; *Read v. Baker,* 438 F.Supp. at 735, finding that an attorney is presumed to have authority upon agreement to the compromise and that the court had inherent power to enforce a settlement entered into by the parties before it. Moreover, *Matzo v. Postmaster General, supra,* held that an attorney may acquire that authority by implication "from the totality of the attorney-client relationship". Finally, in *Capital Dredge & Dock Corp. v. City of Detroit, supra,* the court held that an attorney may possess "apparent authority" to settle claims. In that case, the plaintiff held out his attorney as having authority to represent him in personal-injury and other related claims. The court therefore found that the defendant could reasonably believe that authority existed to settle extra work and delay claims, which were also pending.

■ None of these cases support the motion herein, however, that the settlement be enforced against the government. First, even if the terms and conditions emanated from its trial counsel, the record is clear, and the court so finds, that they adequately disclaimed final authority thereon. Secondly, even if they had claimed otherwise, they lacked capacity as a matter of law to bind the government. *See* 28 C.F.R. ch. I, Part O, Subpart Y ("Authority To Compromise and Close Civil Claims and Responsibility for Judgments, Fines, Penalties, and Forfeitures") and the appendix thereto; *United States v. Beebe, supra. Cf. Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Fennell v. TLB Kent Co.,* 865 F.2d 498 (2d Cir.1989). Accordingly, defendants' motion to enforce the settlement agreement cannot be granted.

### B

■ Specific performance, of course, is an affirmative remedy. Contrary relief which is also within the court's jurisdiction is dismiss-

al for lack of prosecution. Indeed, this and other courts have stated that a

> party plaintiff has a primary and independent obligation to prosecute any action brought by it—from the moment of commencement to the moment of final resolution. That primary responsibility never shifts to anyone else and entails the timely taking of all steps necessary for its fulfillment.

*Avanti Products, Inc. v. United States,* 16 CIT ——, ——, 1992 WL 129490 Slip Op. 92–85, at 2–3 (June 4, 1992). *See Fada Industries v. United States,* 14 CIT 645 (1990).

Clearly, plaintiff's lack of a timely response to defendants' agreement violated that responsibility, but not in this court's judgment to the degree which would warrant dismissal for lack of prosecution. *Compare, e.g., Peart v. City of New York,* 992 F.2d 458 (2d Cir. 1993). In affirming the trial court's dismissal for lack of prosecution on a record more supportive than that herein, the court of appeals examined the following factors:

> (1) the duration of plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) whether the district judge has carefully balanced the need to alleviate court calendar congestion and a party's right to due process; and (5) whether the court has assessed the efficacy of lesser sanctions.

*Id.* at 461, quoting *Romandette v. Weetabix Co.* 807 F.2d 309, 312 (2d Cir.1986), and citing *Harding v. Federal Reserve of New York,* 707 F.2d 46, 50 (2d Cir.1983). The plaintiff's counsel in *Peart* had "failed to comply with two court orders and otherwise demonstrated a lack of respect for the court", failed to return the defendants' "many phone calls and letters requesting assistance in preparing the joint pre-trial order[,] and her filing of the proposed pre-trial order as a final one without consulting [the defendant's] counsel resulted in unnecessary delay." 992 F.2d at 461.

## III

In their motion the defendants claim "extreme prejudice" as a result of plaintiff's response to their agreement, but they have not shown harm to that degree. On the other hand, it has been held that prejudice resulting from unreasonable delay may be presumed as a matter of law. *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982). In the matter at bar, no presumption is necessary; some prejudice to the defendants is obvious. Had the plaintiff complied with the court's July 8th order and not been dilatory, the hearing on September 23rd would not have been called and the defendants would not have had to present themselves, or arguably their motion.

The Equal Access to Justice Act ("EAJA") provides that a court, including this Court of International Trade [7], may award reasonable fees and expenses of attorneys to the prevailing party in any civil action brought by or against the United States or any agency or official thereof and that the government shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law. 28 U.S.C. § 2412(b).

While, as stated, the degree of delinquency herein is not the same as in *Peart,* it is instructive to note that the district court in that case not only dismissed for lack of prosecution, it awarded monetary sanctions in the form of attorneys' fees and expenses for the pretrial activities complained of. That award was also affirmed on appeal. *See* 992 F.2d at 463. Moreover, it has been held that awards for such pretrial matters can be made before entry of final judgment. *See, e.g., Golden Gate Audubon Society, Inc. v. U.S. Army Corps of Engineers,* 738 F.Supp. 339, 341 (N.D.Cal.1988), and cases cited therein. Then again, this court has already granted the defendants summary judgment on a number of counts. *See* 810 F.Supp. 1277, *supra.*

■ However, EAJA restrains a court from making an award if it finds "that the position of the United States was substantial-

---

**7.** *See, e.g., Atochem v. United States,* 9 CIT 207, 210, 609 F.Supp. 319, 322 (1985), citing *Bar Bea*

*Truck Leasing Co. v. United States,* 4 CIT 137 (1982).

ly justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The substantially-justified standard has been interpreted to mean justified in substance or in the main, not justified to a high degree; the action must be justified to a degree which could satisfy a reasonable person and must have a reasonable basis in both law and fact. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); *Morris Mechanical Enterprises v. United States,* 728 F.2d 497, 499 (Fed.Cir.), *cert. denied,* 469 U.S. 1033, 105 S.Ct. 503, 83 L.Ed.2d 395 (1984); *Bailey v. United States,* 721 F.2d 357, 360–61 (Fed.Cir. 1983). The government has the burden of proving satisfaction of the standard. *E.g., Jones v. Lujan,* 887 F.2d 1096, 1098 (D.C.Cir. 1989); *McDonald v. Secretary of Health and Human Services,* 884 F.2d 1468, 1473 (1st Cir.1989); *Bonanza Trucking Corp. v. United States,* 11 CIT 436, 439, 664 F.Supp. 1453, 1455 (1987). Its "position" is both its litigation stance and the underlying administrative action or inaction. 28 U.S.C. § 2412(d)(2)(D); *Urbano v. United States,* 15 CIT 639, 641–642, 779 F.Supp. 1398, 1401 (1991), citing *Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1569 (Fed.Cir.1987), and *Traveler Trading Co. v. United States,* 13 CIT 380, 382, 713 F.Supp. 409, 411 (1989). *See also Jones v. Lujan,* 887 F.2d at 1097 (position comprehends both the government's underlying action and its litigation posture); *Keasler v. United States,* 766 F.2d 1227, 1231 (8th Cir.1985).

■ Though offered the opportunity on September 23rd to justify its position, the plaintiff failed completely to do so.[8] That is, the government has not met its burden of substantial justification with respect to disregard of the court's order of July 8, 1993. Furthermore, the EAJA provision for award of fees "to the same extent that any other party would be liable under the common law" has been interpreted to include bad faith dealings on the part of the government. *Cf. Bonanza Trucking Corp. v. United States,* 11 CIT at 441–42, 664 F.Supp. at 1457–58. The issue then is whether plaintiff's breach of faith with the court in this case is the equivalent of bad faith under 28 U.S.C. § 2412(b).

■ The "bad faith" standard in subsection (b) predates enactment of EAJA, which codified that exception to the long-standing so-called "American rule" of non-award of attorneys' fees to prevailing parties in lawsuits save when the loser has behaved "in bad faith, vexatiously, wantonly, or for oppressive reasons". *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). These words signify more proof than is required to dispel substantial justification. *See, e.g., Barry v. Bowen,* 825 F.2d 1324, 1334 (9th Cir.1987) (bad faith standard "higher than the substantial justification standard"); *Lear Siegler, Inc., Energy Prods. Div. v. Lehman,* 842 F.2d 1102, 1117 (9th Cir.1988):

> ... An award of attorney fees under the "bad faith" exception is punitive, and the penalty can be imposed "only in exceptional cases and for dominating reasons of justice." *Beaudry Motor Co. v. Abko Properties, Inc.,* 780 F.2d 751, 756 (9th Cir.), *cert. denied,* 479 U.S. 825, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986) (quoting *United States v. Standard Oil Co.,* 603 F.2d 100, 103 (9th Cir.1979)). The burden is on the plaintiff to show the government's bad faith. *United States v. Ford,* 737 F.2d 1506, 1509–10 (9th Cir.1984). An award based on bad faith must be supported by specific findings that are not clearly erroneous or on sufficient evidence appearing in the record. *See Toombs v. Leone,* 777 F.2d 465, 471 (9th Cir.1985); *Dogherra v. Safeway Stores,* 679 F.2d 1293, 1298 ( [9th Cir.]1982). If bad faith is found, a fee award is within the ... court's discretion.

A court may consider conduct both during and prior to the litigation, although an award may not be based solely on the conduct that led to the substantive claim. *Perales v. Casillas,* 950 F.2d 1066, 1071 (5th Cir.1992), citing *Sanchez v. Rowe,* 870 F.2d 291, 295 (5th Cir.1989).

---

8. In addition to Mr. Friedland's second declaration, on September 28, 1993 the plaintiff filed a memorandum in opposition to defendants' motion to enforce the settlement agreement. It too is devoid of reasons justifying disregard of the court's July 8th order.

 

In *Brown v. Sullivan*, 916 F.2d 492, 496 (9th Cir.1990), for example, the court of appeals reversed a denial of fees under section 2412(b) on the basis of its own review of the "cumulative effect" of the actions taken by the defendant Secretary of the U.S. Department of Health and Human Services in denying disability benefits to an individual claimant. The court equated "bad faith" solely with the

> Appeals Council's failure to review a tape of an ALJ's hearing ... and other acts that caused delay and necessitated the filing and hearing of additional motions, *viz.*, the Secretary's delay in producing documents and in transcribing the tape.

*Id.* Similarly, in *Cazares v. Barber*, 959 F.2d 753, 755 (9th Cir.1992), the court affirmed an award of attorneys' fees under section 2412(b) based on the "totality of the circumstances, prelitigation and during trial" of a case brought by a pregnant, unmarried high school girl not living with her child's father who had been denied admission to the Honor Society on those grounds. The district court enjoined the holding of any induction ceremony without the plaintiff's participation, whereupon the school called off the ceremony. That act was then equated with bad faith on the part of the government of the United States.

Certainly, more is and has been at stake in the case at bar, and it can fairly be said in view of the years which have been taken by Customs to reach this stage that the plaintiff has acted in bad faith in forestalling further the day when final judgment can enter. Perhaps, award of reasonable attorneys' fees and expenses to the defendants for their involvement in the hearing on September 23, 1993 will aid in realizing the interests of justice in this case.

## IV

To summarize the foregoing, the defendants are entitled to, and may make applica-tion for, an award of reasonable attorneys' fees and expenses incurred in conjunction with the hearing in open court on September 23, 1993.[9] In all other respects, defendants' motion to enforce their settlement agreement must be, and it hereby is, denied. Trial of this case will commence on September 30, 1993.

So ordered.

---

9. The defendants are hereby admonished that any application will be held strictly to the dictates of CIT Rules 11 and 68. Moreover, the Supreme Court has warned that a request for attorneys' fees should not result in additional major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941; 76 L.Ed.2d 40 (1983). The "party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Id.* at 441, 103 S.Ct. at 1943 (Burger, C.J., concurring). *See generally Bonanza Trucking Corp. v. United States*, 11 CIT at 442–47, 664 F.Supp. at 1458–62, and 11 CIT 489, 669 F.Supp. 430 (1987).