SLIP OP. 99-78

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HONORABLE JAMES L. WATSON, SENIOR JUDGE

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Court No. 86-07-00935 |
| DAVID M. RUBINSTEIN, S.G. IMPORT AND EXPORT, INC., LA PETITE GOLD,) INC., UNIQUE ENTERPRISES, INC., and WASHINGTON INTERNATIONAL INSURANCE COMPANY, | ) | OPINION AND ORDER OF DISMISSAL |
| | ) | |
| Defendants. | ) | |
| | ) | |

[Defendant Washington's motion to dismiss for lack of prosecution granted; action dismissed.]

Decided: August 10, 1999

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice ( A. David Lafer, Senior Trial Counsel and Jeffrey A. Belkin, Trial Attorney); Of Counsel, David Goldfarb, Assistant Chief Counsel, U.S. Customs Service, Seattle, Washington, for plaintiff.

Sandler, Travis & Rosenberg, Esqs.; Glad & Ferguson, P.C. (T. Randolph Ferguson, Esq.); Of Counsel, John M. Daley, for defendant Washington International Insurance Company.

## OPINION

**WATSON, SENIOR JUDGE:**

### INTRODUCTION

This is an action commenced by the United States (the "Government" or "plaintiff")

more than thirteen years ago - on July 23, 1986 - pursuant to 19 U.S.C. § 1592(d) for the

recovery of  $416, 639.26, plus interest.[1]  The sum plaintiff seeks to recover represents an alleged

loss of customs duties (plus interest) on five entries of various pieces of gold jewelry at the port

of Seattle, Washington between September and December 1981, nearly eighteen years ago.

The gravamen of plaintiff's complaint is that David M. Rubinstein and the corporate

defendants, S. G. Import and Export, Inc. (S.G. Import), La Petite Gold, Inc. (La Petite), and

Unique Enterprises, Inc. ("Unique"), submitted fraudulent documentation to U.S. Customs at

Seattle in connection with the five entries, allegedly  resulting in undervaluation of the jewelry in

one entry, and with respect to the other four entries, resulting in an erroneous assessment of duty

on less than the full value of the goods.   Defendant Washington International Insurance

Company ("Washington") is the surety designated in the entry bonds posted in the five entries at

Seattle some eighteen years ago.

Jurisdiction of this action is under 28 U.S.C. § 1582. Presently before the court is

Washington's motion seeking dismissal of this case for failure of the Government to prosecute

with due diligence in  accordance with USCIT Rule 41(b)(3).  That rule provides: "Whenever it

appears that an action is not being prosecuted with due diligence, the court may upon its own

initiative after notice, or upon motion of defendant, order the action dismissed for lack of

prosecution."

For the reasons set forth below, the appropriate exercise of the court's discretion requires

---

[1] While the calculation and amount of interest are not an issue in this proceeding, the
court observes with respect to the stated amount in controversy, that due to the fact the subject
entries and alleged lost duties claimed by plaintiff go back to the year 1981, and after intervening
developments suit was filed in1986, due to the element of time Washington already has a
potential prejudgment interest liability under its entry bonds in the hundreds of thousands of
dollars that may well substantially exceed the duty liability of $416,639.26 sought by plaintiff.

that the action be dismissed for failure to prosecute. Since the Government is the plaintiff,

dismissal of this § 1592(d) action for lack of diligent prosecution appears to be a dismissal on

that ground of first impression.

## BACKGROUND

The genesis of this litigation is five entries of gold jewelry at the port of Seattle,

Washington between September and December 1981. Plaintiff claims that in connection with the

first entry, made on September 22, 1981, the importer fraudulently understated the value of the

jewelry by approximately $13,000, causing a loss of duties. Plaintiff further claims that in

connection with making the remaining four Seattle entries,  the importer falsely represented, by

forged documentation, that the imported jewelry had previously been exported to Italy for repairs

to obtain the duty allowance provided by item 806.2040, TSUS (duties are assessed on imported

merchandise previously exported for repairs only on the cost of the foreign repairs rather than on

the full value of the merchandise).

Plaintiff further avers that during the pendency of a fraud  investigation into the 1981

Seattle entries, Rubinstein was under criminal prosecution in the Central District of California

(Los Angeles) in connection with "almost identical" jewelry importations at the port of Los

Angles, and ultimately pleaded guilty to violating 18 U.S.C.§ § 2 and 1001 for making  false

statements in connection with importations.  Rubinstein served a short prison sentence in

California, and according to plaintiff, upon Rubinstein's release from prison in 1986, he

immediately left the United States for Israel. S&G Import, the corporate entity that had imported

the jewelry at Seattle and  had executed the entry bonds in 1981, was dissolved in January 1982.

The Los Angeles importers, La Petite and Unique,  were later dissolved in 1984.

Respecting the Los Angeles transactions, besides the criminal proceedings mentioned above, in 1986 the Government brought a civil action, United States v. David M. Rubinstein, et al., Court No. 86-12-01543, in which a default judgment was entered against Rubinstein and the Los Angeles importers, La Petite and Unique.  The surety on the bonds for the Los Angeles entries, Peerless Insurance Company, settled the civil action with the Government on November 22, 1989.

As for the 1981 Seattle transactions,  the Government commenced this action on  July 23, 1986.  On August 18, 1986, Washington filed its answer and cross-claims against the co-defendants, Rubinstein, S.G. Import, La Petitite, and Unique. Two years later, on February 19, 1988, the Government obtained a default judgment against Rubinstein (who, as previously stated, had gone to Israel in 1986), S.G. Import, La Petite,  and Unique (which defendants by 1986 were long out of business) in the amount of $416,639.26, plus interest.  The Government and Washington then agreed to stay proceedings until the Federal Circuit rendered its decision in United States v. Blum, 858 F.2d 1566 (Fed. Cir. 1988) (the Government may recover lost duties by suit against a surety under its bond pursuant to 19 U.S.C. § 1592(d) based on proof that the importer violated § 1592(a)).

Following the Blum decision by the Federal Circuit  in 1988, favorable to the Government ( it could sue a surety for loss of duties pursuant to § 1592(d) where there had been a violation by the importer under § 1592(a)),  the Government took no further action to prosecute this case for the next two  years -  until October 2, 1990.  On that date, the Government served interrogatories and requests for production of documents on Washington, which responded on January 4, 1991.

After that, the Government took virtually no further action of any significance to prosecute this case  for nearly nine years - from 1990 to May 3, 1999, on which date the Government moved to strike Washington's affirmative defenses that Washington had  pleaded in its 1986 answer. Plaintiff's motion to strike is also sub judice.

On May 23, 1999, Washington filed its motion to dismiss this action for lack of prosecution in accordance with USCIT Rule 41(b)(3).

The Government readily admits that during the 1990-99 period the case was always assigned to an attorney (in fact there had been a succession of four),  and that administrative errors in the Department's case tracking system resulted in losing track of the case for nine years. Plt'fs Memorandum Opposing Washington's Motion to Dismiss for Lack of Prosecution, at 4, fn. 3.

Current Government counsel advises the court that prior Government attorneys assigned to the case could not recall the matter. Decl. of Jeffrey A. Belkin at 1.   It is fair to state that after 1990, this case simply "fell through the cracks."

**DISCUSSION**

**1**.

**THE PARTIES'  CONTENTIONS**

In support of its motion to dismiss, Washington maintains that the Government  failed to diligently prosecute this case for an  unreasonable period  - nine years -  and that such delay has presumptively and actually prejudiced Washington. Therefore, Washington moves to dismiss for lack of prosecution.

The Government contends that dismissal should be denied because: (1) Washington

experienced no actual prejudice because of delay by the Government; (2) in any event, any

prejudice to Washington was due to its failure to prosecute its cross-claims and to seek discovery

from the Government; (3) the Government is now actively engaged in searching for witnesses;

(4) less drastic remedies are available to the court; (5) for the same reasons that courts have

limited the application of laches and equitable estoppel to Governmental action seeking to

enforce a "public right," Washington should be held an even higher burden of proving actual

prejudice; (6) due process favors permitting the Government to maintain this case.

**2.**

**THE COURT HAS DISCRETIONARY AUTHORITY  UNDER USCIT RULE 41(b)(3) TO DISMISS FOR FAILURE TO PROSECUTE.**

It is well settled that dismissal for failure to prosecute is discretionary; the exercise of

such discretion is reversed on appeal only for manifest or gross abuse of discretion. Walker

International Corp. v. United States, 64 CCPA 111, C.A.D. 1190, 554 F. 2d 464 (1977); United

States v. Chas. Kurz Co., 55 CCPA 107, C.A.D. 941, 396 F. 2d 1013 (1968).

 In Kurz,  the appellate court held that the trial judge's dismissal for failure to prosecute

under former Rule 5(b) of the Customs Court was not arbitrary or capricious, and was within the

discretionary authority of the trial judge. See also ILWU Local 142 v. Donavan, 15 CIT 584, 585

(1991), citing United States v. Chas. Kurz Co., supra; A. Hirsh, Inc. v. United States, 12 CIT

721, 723 (1988); United States v. B.B.S. Electronics  International, Inc., 9 CIT 561, 563, 622 F.

Supp. 1089, 1091-92 (1985); United States v. Joan and David Helpern Co., 9 CIT 275, 611 F.

Supp. 985 (1985); Silver Reed America, Inc. v. United States, 5 CIT 279, 565 F. Supp. 1047

(1983), rev'd on other grounds sub nom. Consumer Products Div., SCM Corp. v. Silver Reed

America, Inc., 753 F. 2d 1033 (1985).

Dismissal for lack of prosecution is, of course,  a drastic sanction, which should  be imposed sparingly. A. Hirsh, 12 CIT at 723.  An action will not be dismissed "in the absence of a showing of a clear pattern of delay, contumacious conduct, or failure to comply with orders of the Court." Id.

No exact rule can be laid down, and each case must be looked at with regard to its own peculiar procedural history and situation at the time of dismissal. Sandee Mfg. Co. v. Rohn & Haas Co., 298 F. 2d 41, 43 (7th Cir. 1962). Considering the procedural history of this case, particularly the extraordinary, unexplained and inexcusable 1990-99 period of delay, dismissal for lack of prosecution is clearly within the discretion of the court - indeed likelihood of an abuse of discretion points in the direction of permitting even further delay by the Government.

**3.**

**CONSIDERATION OF THE RELEVANT PRINCIPLES  WARRANTS DISMISSAL**

In Chas. Kurz, supra,  at a calendar call of the Customs Court in Philadelphia on November 16, 1965, the trial judge noted that the case in question was filed in 1961, had been on the court's calendar 8 times, and pointed out to plaintiff's counsel, "these old cases present a problem." After some colloquy with counsel, Government counsel moved to dismiss for failure to prosecute.  Plaintiff's counsel objected to dismissal on the ground the Government had not served advance notice it would move to dismiss, to which objection the trial judge replied that counsel should have anticipated a motion to dismiss since the matter was a stale case. Thereupon, the trial judge dismissed plaintiff's action for lack of prosecution under Customs Court Rule 5(b) (one of the predecessor rules to USCIT Rule 41(b)(3)).

After some intervening post-dismissal proceedings, the trial judge's dismissal was

appealed for review by the Customs Court's three-judge panel Appellate Term. The Appellate

Term  reversed the trial judge holding that dismissal for lack of prosecution was not "warranted"

since, inter alia,  plaintiff was willing to prosecute the case and was not permitted to do so

because of lack of notice to the Government.

The Government then appealed the Appellate Term's reversal of  the trial judge's

dismissal  to the Court of Customs and Patent Appeals (the predecessor of the Federal Circuit),

and the sole issue on appeal was whether the trial judge had properly exercised his authority

under the rule permitting dismissal for lack of prosecution.

In reversing the Appellate Term and upholding the trial judge's exercise of his discretion

in the dismissal, the CCPA in Kurz stated the following:

> Absent case law authority of our own jurisdiction, we are inclined
> to agree with the Government's reliance on:
>
> > The principles of law which govern dismissal of cases for lack of
> > prosecution are succinctly set forth in the frequently cited case of
> > Sweeny v. Anderson, 129 F. 2d 756 (C.A. 10 1942) wherein it is
> > stated (page 758):
> > > The elimination of delay in the trial of cases and the prompt
> > dispatch of court business are prerequisites to the proper administration
> > of  justice.  These goals cannot be attained without the exercise by the
> > courts of diligent supervision over their own dockets. Courts should
> > discourage delay and insist upon prompt disposition of litigation.
> > Every court has the inherent power, in the exercise of a sound judicial
> > discretion, to dismiss a cause for want of prosecution. The duty rests
> > upon plaintiff to use diligence and to expedite his case to a final
> > determination. The decision of a trial court in dismissing a cause
> > for lack of prosecution will not be disturbed on appeal unless it
> > is made to appear that there as been a gross abuse of discretion.
> > [citations omitted.]

Kurz, 55 CCPA at 110, 396 F.2d at 1016.

The Sweeny rationale of "diligent supervision" in the management of the court's business cited in Kurz, was again approved by the appellate court in Walker International, 64 CCPA at 113, 554 F.2d at 466. Moreover, as previously noted, Judge DiCarlo in ILWU Local 142 , supra, 5 CIT at 585, followed the Kurz rationale.

In United States v. Dantzler Lumber & Export Co., 17 CIT 1068, 1075, 833 F. Supp. 927, 933 (1993), Judge Aquilino referred to the following factors examined by the Second Circuit in Peart v. City of New York, 992 F.2d 458,462 (2d Cir. 1993), in deciding whether a case should be dismissed for failure to prosecute:

> (1) the duration of plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) whether the district judge has carefully balanced the need to alleviate court calendar congestion and a party's right to due process; and (5) whether the court has assessed the efficacy of lesser sanctions.

As an additional factor, the Government requests that the court examine the extent to which a defendant that moves to dismiss for failure to prosecute has itself been diligent in pursuing its own discovery against the plaintiff  and prosecuting its cross-claims.  Thus, here the Government posits that since Washington did not attempt to obtain its own discovery against the Government and prosecute its cross-claims against Rubinstein and the other co-defendants, Washington should not now be heard to complain about any  lost opportunity to timely test the accuracy and veracity of plaintiff's documentary investigative evidence, including reports and statements of relevant witnesses, and otherwise obtain exculpatory evidence.  Plaintiff also contends that the court must consider that the plaintiff is the Government which is suing to "enforce a public right."  The foregoing factors are addressed below.

**4.**

**PLAINTIFF FAILED TO PROSECUTE WITH DUE DILIGENCE**

The primary rationale underlying dismissal for failure to prosecute is the failure of

plaintiff to prosecute its case. A. Hirsh, 12 CIT at 723. Plaintiff's attempt to shield itself from the

application of Rule 41(b)(3) by pointing  to Washington's own lack of discovery efforts during

the period of delay is entirely disingenuous. Clearly, while the court may consider the extent, if

any,  defendant has itself affirmatively delayed prosecution of the case by plaintiff (i.e., engaged

in "delaying tactics"), defendant has no duty to take any affirmative steps whatever to bring

plaintiff's case to trial.

In short, under Rule 41(b)(3),  plaintiff alone is responsible for diligently pursuing its

case against Washington and this responsibility never shifts to a defendant. Dantzler, 17 CIT at

1072, 833 F. Supp. at 931, quoting Avanti Products, Inc. v. United States, 16 CIT 453, 453-54

(1992) ("a party plaintiff has a primary and independent obligation to prosecute any action

brought by it –  from the moment of commencement to the moment of final resolution. **That**

**primary responsibility never shifts to anyone else and entails the timely taking of all steps**

**for its fulfillment"** (emphasis added). Accordingly,  for purposes of dismissal of plaintiff's case

under Rule 41(b)(3), any lack of diligence by defendant with respect to prosecuting its cross-

claims is totally irrelevant.[2]

_____

[2]Washington also correctly contends that its cross-claims for reimbursement and
indemnification against its co-defendants remain contingent upon the Government establishing
Washington's liability under §1592(d) as surety on the entry bonds. A duty liability of a surety
pursuant to §1592(d) may be established in action against the surety by proof that the importer
violated §1592(a). See Blum, 858 F.2d at 1569. Section 1592(a) imposes liability on one who

Disregarding the undisputed fact that  plaintiff  took no action to prosecute the case

against Washington  for two years after the Federal Circuit's <u>Blum</u> decision in 1988, and then

pursued only very minimal discovery against Washington in 1990, the gravamen of plaintiff's

motion under Rule 41(b)(3) is that inexplicably no further action by the Government occurred

for nine years, until May 1999.

One factor to be considered on a motion to dismiss under Rule 41(b)(3) is the duration of

plaintiff's delay. <u>Dantzler Lumber</u>, <u>supra</u>, 17 CIT at 1075, 833 F. Supp. at 933. Plaintiff's delay in

prosecuting this action is far longer and more egregious than that involved in <u>Helpern</u>, which is

the case the Government argues is  most similar to the current case. In <u>Helpern</u>, the court was

presented with a delay <u>starting with the dates of entry</u> of a total of <u>six and one-half years</u>. 9 CIT

at 278, 611 F. Supp. at 989.  Here, if we were to go back to the dates of entry in 1981, the

duration of the controversy between the parties would be <u>eighteen</u> years. Further, in the current

case, unlike the situation in <u>Helpern</u> where both parties caused the delay, Washington shares no

such responsibility.

The Government's reliance on <u>B.B.S. Electronics</u>, <u>supra</u>,  is also misplaced. There, suit

was promptly brought against the importer and surety, settlement discussions took place, and

thereafter, defendants moved to dismiss for lack of prosecution, contending that the action had

---

enters merchandise by means of any document that is material and false. 19 U.S.C. § 1592(a)(1).
If plaintiff were to establish Washington's asserted § 1592(d) liability for the alleged lost duties,
then Washington would automatically become entitled to recover under its cross-claims for
indemnification by its co-defendants for Washington's payment of lost duties to the Government
as surety under the bonds.  However, Washington's failure to pursue discovery against the
Government or prosecute its cross-claims during the period of the <u>Government's delay</u> in
prosecuting the principal action is irrelevant to whether the action should be dismissed for the
Government's failure to prosecute.

been inactive for more than two years. The court rejected the argument that dismissal was

mandatory after a one-year delay, 9 CIT at 563, 622 F. Supp. at 1092, and although disapproving

plaintiff's laxness in prosecuting the action for two years, the court nonetheless denied the motion

to dismiss for failure to prosecute.

The extreme disparities in the particular circumstances and duration of the delays

between the current case on the one hand, and the Helpern and B.B.S. Electronics cases on the

one hand (where dismissal was not granted), are so patently obvious as not to warrant further

comparative analysis. See also  ILWU Local 142, supra, where absent justification, a three year

delay warranted dismissal for lack of prosecution, and  A. Hirsh, Inc., supra (dismissal for 2 year

delay).

In an attempt  to now invigorate prosecution of  this long dormant case in response to

Washington's motion to dismiss, current Government counsel  (the fourth one assigned to this

case by the Department)[3]  represents to the court he recently discussed settlement with

Washington's counsel (which was unsuccessful), and the Government is now  actively engaged in

searching for relevant witnesses. Pltf's Mem.Opp. Motion to Dismiss, at 8, 18.   The salutary

policy favoring disposition of cases on the merits has not been overlooked, but notwithstanding

the Government's recent activity, denial of Washington's motion and further delay would simply

make Rule 41(b)(3) a sham and its purpose a mockery.

---

[3] Apparently offered as an excuse for the nine-year delay, the Government alludes in its memorandum  to several  changes of counsel assigned to the case at the Department of Justice over the period of inaction. Four changes of attorneys at the Department are not surprising considering a nine-year period and normal rates of turnover in personnel. Thus,  it is more likely that the nine-year delay contributed to the necessity to change assigned counsel, and such changes in themselves did not cause the delay.

**5.**

**WASHINGTON HAS BEEN  PREJUDICED BY THE GOVERNMENT'S DELAY**

In an action brought by the Government pursuant to 19 U.S.C. § 1592 , the court has held  "prejudice resulting from unreasonable delay may be presumed as a matter of law," Dantzler Lumber & Export Co., 17 CIT at 1073, 833 F. Supp. at  931, citing Lyell Theatre Corp. v. Lowes Corp., 682 F.2d 37, 43 (2d Cir. 1982) (emphasis added).  However, from the  nine-year delay and other circumstances of this case,  "no presumption is necessary; some prejudice to the defendant is obvious," quoting from Dantzler, 17 CIT at 1073, 833 F. Supp. at 931.  See also Moore v. Telfon Communications Corp., 589 F.2d 959, 967-68 (9th Cir. 1978) (failure to prosecute diligently alone justifies dismissal, even if actual prejudice to defendant is not shown).

It has been held in the Ninth Circuit that "[a]lthough prejudice to defendants may be presumed from 'unreasonable delay,' * * * whether actual prejudice exists may be an important factor in deciding whether a given delay is 'unreasonable'." Citizens Utilities Co. v. Am. Tel. and Tel. Co., 595 F. 2d 1171 (9th Cir. 1979)(cited in Helpern, supra).  However, here the nine-year period of unexplained and unjustified inaction is prima facie "unreasonable." Plaintiff's unreasonable delay and defendant's actual prejudice are inextricably intertwined. See Nealy v. Transportacion Maritima Mexicana, S.A., 662 F. 2d 1275, 1280 (9th Cir. 1980) ("the longer the delay, the more likely prejudice becomes.").  Unlike cases where the duration of the delay is only moderate or excusable, and lack of actual prejudice on the part of defendant may become relevant in the exercise of the court's discretion, see Messenger v. United States, 231 F.2d 328, 330-31 (2d  Cir. 1956) (operative condition of federal rule for dismissal for lack of diligence in prosecution is lack of diligence by plaintiff and not prejudice to defendant), the delay here is

inexplicable and extraordinary in duration.  At some point on a time-continuum, unreasonable

delay and lack of due diligence in prosecution of a case alone  reaches a point where dismissal is

compelling; indeed, whether or not there is showing of actual prejudice to a defendant, in the

management of its business, the <u>court too</u> is an intended  beneficiary of the remedy of dismissal

for plaintiff's failure to exercise diligence in prosecution under Rule 41(b)(3). <u>See</u> <u>Kurz</u>, 55

CCPA at 110, 396 F.2d at 1016, quoting <u>Sweeny v. Anderson</u>, 129 F.12d 756 (10th Cir. 1942).

.        Thus, a case in point is <u>Silver Reed America, Inc. v. United States</u>, 5 CIT 279, 565 F.

Supp. 1047 (1983), wherein an issue before the court was whether it was within the court's

discretion to dismiss a case for lack of prosecution on the <u>sole basis of delay</u> , <u>e.g.</u>, without a

showing of actual prejudice to defendant. Judge Newman held  there is no doubt that the Court

does have such discretion, but the court must be persuaded to exercise that discretion.

Continuing, the court observed that "[w]hile the above cases demonstrate that, <u>in an appropriate</u>

<u>situation, the court will, without more  dismiss upon a showing of unreasonable delay in</u>

<u>proceeding</u>," the court found dismissal unwarranted in <u>Silver Reed</u> where a two-year delay was

largely justified by expectation that a controlling decision in a pending appellate court case, in

which plaintiff and intervener were parties, could render the action in <u>Silver Reed</u> moot, and

plaintiffs had already filed a dispositive motion under Rule 56.1. 5 CIT at 281, 565 F. Supp. at

567 (emphasis added).<sup>4</sup>

        The circumstances here are easily distinguishable from those in <u>Silver Reed</u>.  wherein the

court exercised its discretion to deny the motion to dismiss.  Here, there was a nine-year period

---

        <sup>4</sup> The government's motion of May 9, 1999, is nondispositive and thus is in no way
comparable to the Rule 56.1 motion filed in <u>Silver</u> <u>Reed</u>.

of complete inactivity - which alone is completely distinguishable from  Silver Reed's two-year

delay; here, unlike Silver Reed, justification for the delay or excusable neglect  by the

Government is totally nonexistent; and  here, unlike Silver Reed, the Government has not filed a

dispositive motion .

The Government argues that Washington's claimed loss of exculpatory evidence, if any,

can only be related to events that had occurred prior to the commencement of this action in

1986,[5] and consequently, Washington's asserted prejudicial loss of evidence has no causal nexus

with the nine-year period of inactivity, 1990-99. This court must disagree.

Washington contends  that it does not base its claim of actual prejudice upon any loss of

evidence occurring prior to the commencement of this action.[6]  Rather, Washington complains

there can be no assurance that witnesses or other evidence that could  refute the Government's

investigative evidence and the pertinent transactional business records  are still available and that

relevant witnesses are still available to interview,  depose, or call to trial, or that the memories of

still available witnesses to relevant events related to the 1981 entries have not faded.   Certainly,

the memories of the Customs personnel that investigated the 1981 entries and submitted

investigative reports have faded over time, and whether or not they can be adequately refreshed

as to the events which transpired eighteen years ago, or even earlier, by the still available

---

[5]As noted in the background facts, when this action was commenced in 1986, Rubinstein
had left the United States for Israel and the corporate defendants had long ceased doing business.

[6] Plaintiff considers the loss of evidence during the four and one-half year delay by the
Government in filing this lawsuit to be an element of its equitable defense of laches, which
defense is not relevant to Washington's motion under Rule 41(b)(3).  Washington claims that
plaintiff's lack of prosecution of this action resulted in prejudicial loss of evidence after the
action was commenced.

documentation is purely speculative.

**6.**

**THE GOVERNMENT AND PRIVATE PARTY PLAINTIFFS ARE TREATED THE SAME UNDER RULE 41(b)(3) FOR FAILURE TO PROSECUTE**

The court, of course,  recognizes that in this case the plaintiff  is the Government. The court has considered  plaintiff's  contention that since this is a section 1592(d) action to enforce a so-called "public right," the rationale articulated by the courts for limiting the equitable doctrines of estoppel and laches to the Government should also be applicable under Rule 41(b)(3). Such proposition is conceptually unsound and unsupported  by any authority the Government has called to the court's attention.  It suffices here to state without elaboration that the rationale and objectives of not permitting a party to invoke against the Government either equitable estoppel, see New Zealand Lamb Co. v. United States, 149 F.3d 1366, 1368 (Fed. Cir. 1998), or laches for delay in commencing an action, see United States v. Tabor, 9 CIT 233, 243, 608 F. Supp. 658, 666 (1985), are patently inapplicable to the policy underlying Rule 41(b)(3) for dismissing stale actions for  failure of diligent prosecution after an action has been commenced. In short, Rule 41(b)(3) should be applied equally under the same principles whether the plaintiff is the Government suing to collect lost duties or an importer or other private party seeking a refund of duties or other action. The Government has called no authority to the court's attention which supports the proposition  that  Governmental delay in prosecuting a duty collection case should be looked upon more liberally under Rule 41(b)(3) than failure to diligently prosecute by a private party plaintiff.  Unreasonable delay has the same adverse impact on a defendant and the business of the court irrespective of who the plaintiff is, and a Government/private party

distinction under Rule 41(b)(3) must be  rejected as untenable.

**7.**

**THE GOVERNMENT'S PROPOSED ALTERNATIVE REMEDIES ARE INADEQUATE**

The Government argues that if the court finds that its nine-year delay in this case is sanctionable at all, it suggests that an appropriate alternative to dismissal under Rule 41(b)(3) would be  the partial loss of pre-judgment interest for the period of delay (the Government suggests denial of prejudgment interest from January 4, 1991 to April 1, 1999). The court agrees with Washington that diminution of interest in this case to compensate for the period of delay is not a viable alternative to dismissal for lack of prosecution because, among other concerns, diminution of interest cannot rectify Washington's prejudicial lost  opportunity to challenge the accuracy and veracity of the Government's investigative evidence and obtain other exculpatory evidence that might have successfully defended this action and resulted completely in no recovery by the Government. Moreover, this court is convinced that permitting further delay in this case would simply postpone a trial indefinitely.

**<u>CONCLUSION</u>**

In summary, there is a clear record of failure of diligent prosecution and a total absence of excusable neglect by the Government that can be adequately addressed only by the remedy provided by Rule 41(b)(3). For all the reasons discussed in this opinion, Washington's motion to dismiss is  hereby granted, and judgment will be entered accordingly.

Plaintiff's motion to strike the affirmative defenses asserted by Washington is hereby

denied as moot.

Dated: New York, N.Y.
      August 10, 1999                                        _____

                                                                 James L. Watson, Senior Judge